## Lewis v. Commonwealth.

(Decided January 26, 1923.)

### Appeal from Harlan Circuit Court.

1. Arrest—Commission of Public Offense in Presence of Officer—Evidence.—An officer has no right to arrest another except under a valid warrant issued for the purpose, or where a public offense is committed in his presence, or he has reasonable grounds to believe that the one arrested has committed a felony. When an arrest is so made any evidence found by searching the person of the defendant will be competent-although discovered without the aid of a search warrant; but, unless the arrest is made under one of the grounds permitting it the discovery of such evidence would be unlawful and incompetent against defendant on his trial for any offense developed thereby.

2. Intoxicating Liquors—Drunkenness.—Section 24 of chapter 33, Acts 1922, makes it unlawful for one to be drunk at certain designated places, but, as shown in the opinion, none of them include a room in a hotel, unless the drunken person is disturbing the peace of some one at the same time. Therefore, an officer who

finds one drunk in a room of a hotel, without such one disturbing the peace of another, is not authorized to arrest the drunken person upon the ground that a public offense was committed in the officer's presence, since one of the elements necessary to constitute the offense by a drunken person in such place, is wanting.

3.  Criminal Law—Instructions in Writing in Criminal Case—Waiver.
—Section 225 of the Criminal Code of Practice requires instructions in a criminal case to be in writing, which is mandatory, but may be waived by defendant in any of the methods allowed by law; but unless so waived the error will compel a reversal of the judgment.

SNYDER & ADKINS for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On his trial under an indictment returned by the grand jury of Harlan county on April 11, 1922, accusing him of the offense of carrying concealed on or about his person a deadly weapon other than an ordinary pocket knife, the appellant and defendant below, Ben Lewis, was convicted. The court overruled his motion for a new trial and he has appealed.

Some question is made about the sufficiency of the indictment as well as the action of the court in trying defendant during his temporary absence from the court room for the purpose of notifying by telephone his witnesses in another indictment pending against him in the same court that it had been continued by agreement and that they need not attend court, but because of the errors hereinafter pointed out, we deem it unnecessary to consider either of those complaints.

The only witness introduced by the Commonwealth was J. V. Gross, who testified that he was a constable in Harlan county and was the chief peace officer in the mining town of Lynch, located in that county; that he was notified one night in March, 1922, by the clerk of a hotel in that town that a crowd of persons were drunk in one of the rooms of the hotel, whereupon witness went to the room and said he found "some of them drinking." He then and there arrested the defendant and searched him, finding concealed upon his person a pistol which could not be and was not seen by the witness until after the search. He stated that he arrested defendant because he was drunk and not for carrying concealed deadly weapons, for which he was indicted and tried. Contin-

uing his testimony he said: ''I took him before Squire Huff, the magistrate of that district, and he was bound over to answer an indictment of the circuit court for carrying a concealed deadly weapon, which was the one I found on him. I had no warrant for the arrest or search of the person of Ben Lewis before I found this pistol. I caused no warrant to be issued for drunkenness. He was not tried or fined before the magistrate on a charge of drunkenness and no warrant was issued for any charge. Ben Lewis did not commit any breach of the peace or other offense in my presence, authorizing his arrest, but I arrested him solely because he was drunk.''

Under the provisions of section 36 of the Criminal Code a peace officer may arrest one under a legal warrant authorizing him to do so, or he may make the arrest without a warrant ''when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony.'' Unless, therefore, he has a warrant, or the offense was committed in his presence, or he has reasonable grounds to believe that the arrested person has committed a felony, he has no authority to make the arrest, and under the law, as declared by this and other courts, any evidence which might be found upon the arrested person when the arrest was made without authority can not be used against him. A leading late case from this court is that of Youman v. Commonwealth, 189 Ky. 152. It is admitted that the witness had no warrant authorizing the arrest of defendant, nor is it claimed that he had reasonable grounds to believe that defendant had committed a felony; so that the only remaining ground authorizing his arrest would be the commission by defendant of a public offense in the presence of the witness, and the only pretended one so committed, if any, was that of being drunk in the presence of the officer while in a room in the hotel. Whether that constituted a public offense is the question for determination.

We are not informed from anything contained in the record whether the arrest was made after the 22nd day of March, 1922, when chapter 33, Acts 1922, commonly known as the ''Rash-Gullion Act,'' took effect, or whether it was before that day, since the witness says that it was in March of that year. But whether it was the one date or the other, the law upon the subject was the same, since section 24 of the act referred to is the same as section 28 of the 1920 act relating to the same subject; and the sec-

tion (24) of the latter act says: "Any person who shall in any public place, or in or upon any passenger coach, street car, or in or upon any vehicle commonly used for the transportation of passengers, or in or about any depot, platform, waiting station or room, drink any intoxicating liquor of any kind, or if any person shall be drunk or intoxicated in any public or private road, or in any passenger coach, street car, or other public place or building, or at any public gathering, or if any person shall be drunk or intoxicated, and shall disturb the peace of any person, he shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine of not less than ten dollars nor more than one hundred dollars, or by imprisonment for not less than five days nor more than thirty days, or by both such fine and imprisonment." It will be seen from its terms that it is a misdemeanor for one to drink intoxicating liquors at certain places named in the statute, and that it is likewise a misdemeanor "to be drunk or intoxicated in any public or private road, or in any passenger coach, street car, or other public place or building, or at any public gathering, or if any person shall be drunk or intoxicated, and shall disturb the peace of any person." Clearly there is nothing found in the statute making it a misdemeanor to be drunk in a room in a hotel, unless it be included in the language "or other public place or building." Manifestly, that language means a place exposed to the public and where the public gather together or pass to and fro, and the building referred to means a public one and belonging to or used by the public for the transaction of public or quasi public business, such as a school house, court house, or other similar one. Neither may the *mere act of drunkenness* at any undesignated place be included in the phrase found in the statute, "or if any person shall be drunk or intoxicated and shall disturb the pease of any person," since two things are necessary to constitute that offense, drunkenness accompanied with a disturbance of the peace of some one. It is not pretended that the latter element, that of disturbing another's peace, existed in this case, or if so that it occurred in the presence of an officer.

The conclusion is, therefore, inevitable that the arrest of defendant by the witness for the Commonwealth was unauthorized, in which case he had no right to search the person of defendant and any facts he discovered because of such unlawful search were incompetent. It would be

an easy task to show that section 10 of our Constitution applies as well to the search of one's person as it does to his houses, papers, possessions, etc. In fact, the inhibition of the section is directed as much against the seizure of one's person without proper authority to do so as it is to the searching of any place or other thing mentioned in the section belonging to or in the possession of him. Clark v. Hampton, 163 Ky. 698; State v. Peterson, 13 A. L. R. 1284; the Youman case, *supra,* and annotations in the same volume of A. L. R. on page 1316.

The court gave to the jury oral instructions to which defendant objected both as to their substance and the manner in which they were given. He also relied upon that fact in his motion for a new trial; so that the record is in the exact condition as was the one in Siler v. Commonwealth, 195 Ky. 829, and which was a case tried by the same court. The judgment of conviction in that case was reversed solely upon the fact that the instructions were oral instead of in writing, as required by section 225 of the Criminal Code, and which defect was not waived by defendant. In that case will be found cited a number of others from this court endorsing the same rule of practice which, indeed, is imperatively demanded by the mandatory provisoins of the section of the Code referred to and from which there is no escape except a waiver by the defendant.

If defendant was drunk, but about which there is dispute as well as doubt, then, as said in the case of Little v. Commonwealth, 177 Ky. 24, we would have "a case where two arch enemies of the peace and happiness of humanity (whiskey and a pistol) met," which, co-operating together, as said in that case, are the cause of much trouble and many woes to mankind. Both of the practices can not be too strongly condemned, and it is to be regretted that the imperative provisions of the law, which our duty, as well as our oaths of office, forces us to respect, compel a reversal of the judgment. Such a consequence, however, could many times and in a large measure be prevented if the trial courts would but observe long established fundamental rules of practice.

There being no other alternative, the judgment is reversed for proceedings consistent with this opinion.