Stuart G. YEOMAN, M.D., et al., Appellants,

v.

COMMONWEALTH of Kentucky, Health Policy Board, et al., Appellees.

No. 97–SC–274–TG.

Supreme Court of Kentucky.

Nov. 19, 1998.

Philip J. Edwards, Louisville, Kentucky, Edward D. Klatte, Cabinet for Health Services, Frankfort, Kentucky, Leonard G. Rowekamp, Wolnitzek, Rowekakmp, Bender & Bonar, P.S.C., Covington, Kentucky, Cathy Cravens Snell, Revenue Cabinet, Division of Legal Services, Frankfort, Kentucky, for appellees.

STEPHENS, Justice.

Appellants challenge the constitutionality of House Bill ("HB") 250 (enacted April 15, 1994), which provides for wide-ranging health care reforms, including, but not limited to creation of a Health Policy Board, provider arbitration, certificate of need procedures, insurance reform, medical education and medical taxation.

Appellants' challenge to HB 250 is based on the following grounds: First, the bill is special legislation passed in violation of § 59 of the Kentucky Constitution. Second, it violates the equal protection guarantees of the United States and Kentucky Constitutions. Third, HB 250 is a revenue raising measure which was created in violation of § 47 of the Kentucky Constitution, either because it originated in the Senate or because the Senate amendments to HB 250 are unrelated to revenue. Fourth, HB 250 delegates certain powers of the Governor to a third party in violation of the principle of separation of powers. Fifth, the privacy rights of the citizens of the Commonwealth are violated by the release of certain information pursuant to HB 250. Sixth, actions of certain officials violated the Open Meetings Act. Seventh, HB 250 provides for the payment of government officials by a non-governmental organization. Eighth, a provider tax, which is a part of HB 250, violates the supremacy clause of the United States Constitution. Ninth, HB 250 is not appropriately titled, in violation of § 51 of the Kentucky Constitution. We shall address each of the appellants' arguments in turn, but first we shall review the procedure and facts of this case.

On November 2, 1994, appellants' brought this action in Franklin Circuit Court. Cross motions for summary judgment were filed and denied on June 29, 1995. The parties then entered into the discovery process and cross motions for summary judgment were filed again. On November 8, 1996, the trial court granted appellees' motion upholding the constitutionality of HB 250. Appellants appealed the Franklin Circuit Court's judgment to the Kentucky Court of Appeals. On March 27, 1997, the Court of Appeals recommended that this case be transferred to this Court. On April 24, 1997, this Court granted transfer of this action pursuant to CR 74.02(5). We now affirm the decision of the Franklin Circuit Court and hold that HB 250 is constitutional.

During the 1993 Second Extraordinary Session of the General Assembly, the issue of health care reform was extensively debated. As a result of that debate, HB 1 was enacted.[1] HB 1 enacted a new health care provider tax which met federal standards in order for the Commonwealth of Kentucky to qualify for matching funds from the federal government. The constitutionality of HB 1 was challenged and subsequently upheld in *Commonwealth, Revenue Cabinet v. Smith*, Ky., 875 S.W.2d 873, *cert. denied sub nom Yeoman v. Kentucky*, 513 U.S. 1000, 115 S.Ct. 509, 130 L.Ed.2d 417 (1994).

As noted, in 1994, the Kentucky General Assembly ("General Assembly") enacted HB 250, the legislation which is the subject of this appeal. On March 3, 1994, the Kentucky House of Representatives ("House") passed HB 250 as it had been originally introduced with 21 separate sections. Later that same day, HB 250 was received by the Kentucky Senate ("Senate"). Following a review of HB 250, the Senate drafted two Senate Committee Substitute bills. The Senate ultimately passed the second Senate Committee Substitute Bill with 25 floor amendments. On March 23, 1994, the House received the Senate version of HB 250, but the House refused to concur in the amendments. The Senate was unwilling to modify its version of HB 250

and sent it back to the House for a second vote.

In order to resolve the differences between the two chambers, the House and Senate leadership appointed a Conference Committee, which was unable to concur on a compromise bill. The House and Senate leadership then appointed a Free Conference Committee.

The Free Conference Committee filed a report in both chambers, but only the Senate accepted it. The Senate passed the free Conference Committee version of HB 250 and on April 15, 1994, the House reconsidered the Free Conference Committee report and adopted it, thereby passing the present version of HB 250.

## I. ARE APPELLANTS BARRED BY THE DOCTRINE OF RES JUDICATA FROM BRINGING THE INSTANT SUIT?

Before addressing appellants' arguments, we must first resolve the issue of whether appellants are precluded as res judicata by this Court's ruling in *Commonwealth, Revenue Cabinet v. Smith*, Ky., 875 S.W.2d 873, *cert. denied sub nom Yeoman v. Kentucky*, 513 U.S. 1000, 115 S.Ct. 509, 130 L.Ed.2d 417 (1994), in which a similar health care bill was challenged and found to be constitutional, from challenging HB 250. Res judicata is the Latin term for "a matter adjudged."

> The doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

46 *AmJur* 2d § 514.

■■■ The rule of res judicata is an affirmative defense which operates to bar repetitious suits involving the same cause of action. The doctrine of res judicata is formed by two subparts: 1) claim preclusion and 2) issue

---

1. HB 1 (1993), Enact. Acts 1993, ch. 2, § 3 (2d Ex.Sess.), codified at KRS §§ 142.201–259, 216.270–287, now repealed.

preclusion.[2] Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Worton v. Worton*, 234 Cal.App.3d 1638, 286 Cal.Rptr. 410 (2 Dist .1991), *rev. denied* (Cal) 1992 LEXIS 472; *County of Rutherford by Child Support Enforcement Agency v. Whitener*, 100 N.C.App. 70, 394 S.E.2d 263 (1990); Vestal, *The Constitution and Preclusion—Res Judicata*, 62 Mich.L.Rev. 33. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action. The issues in the former and latter actions must be identical. The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts. If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action. *Worton*, 234 Cal.App.3d at 1638, 286 Cal.Rptr. 410; *Commonwealth, Dept. of Transp. v. Crawford*, 121 Pa.Cmwlth. 613, 550 A.2d 1053 (1988).

■ For claim preclusion to bar further litigation, certain elements must be present. First, there must be identity of the parties. *Newman v. Newman*, Ky., 451 S.W.2d 417, 419 (1970). Second, there must be identity of the causes of action. *Id.* Third, the action must have been resolved on the merits. *Id.* The rule that issues which have been once litigated cannot be the subject matter of a later action is not only salutary, but necessary to the speedy and efficient administration of justice.

■ We find that appellants are not barred by claim preclusion from challenging the health care provider tax of HB 250 by this Court's previous adjudication in *Smith*, 875 S.W.2d at 873. While HB 250 contains certain provisions which are similar to HB 1,

they are not identical bills. HB 1 only contains a provider tax and the guidelines for collecting this tax. On the other hand, HB 250 is a complex health reform bill made up of 21 subparts, only one of which was the provider tax. For claim preclusion to apply, the subject matter of the subsequent suit must be identical. Since it is clear that the challenged portions of HB 1 and HB 250 are not identical, claim preclusion does not apply in the instant case.

■ For issue preclusion to operate as a bar to further litigation, certain elements must be found to be present. First, the issue in the second case must be the same as the issue in the first case. *Restatement (Second) of Judgments* § 27 (1982). Second, the issue must have been actually litigated *Id.* Third, even if an issue was actually litigated in a prior action, issue preclusion will not bar subsequent litigation unless the issue was actually decided in that action. *Id.* Fourth, for issue preclusion to operate as a bar, the decision on the issue in the prior action must have been necessary to the court's judgment. *Id.*

■ The only issue which appellants might be precluded from arguing in this case is whether the provider tax is unconstitutional under § 59 of the Kentucky Constitution and the equal protection requirements of the United States and Kentucky Constitutions. While we held that the provider tax created by HB 1 is constitutional, *Smith*, 875 S.W.2d at 877–78, the tax created by HB 250 is not identical. Thus issue preclusion cannot apply, because the issue we are faced with in the instant case is not identical to the one in the previous case. While the provider tax in HB 1 prohibits the health care provider from passing the tax onto the consumer, the provider tax in HB 250 does not. The provider tax in HB 1 permits the Secretary for the Cabinet for Human Resources to add additional classes of health care providers to the

---

**2.** In this opinion we employ the term claim preclusion to refer to the doctrine which bars subsequent litigation of a cause of action which has previously been adjudicated. The term issue preclusion is employed to refer to the doctrine which prohibits issues which were adjudicated in a previous lawsuit from being relitigated in a subsequent lawsuit. Res judicata is the Latin term which encompasses both issue and claim preclusion and is not to be used as synonymous with either individually, but rather equally with both. Collateral estoppel is a term used by some to refer to issue preclusion, but for simplicity's sake, we shall not use it in this opinion.

list of those already subject to the tax. The provider tax in HB 250 does not. While defendants characterize these as minor differences, in the arena of issue preclusion, such differences are sufficient to avoid issue preclusion and to permit a second trial on the merits. This is a close case, but we feel that given the magnitude of the constitutional issues involved, we should err on the side of caution by resolving the issue on the merits. Since we find the first of the four requirements for issue preclusion is not met, we find it unnecessary to address the three remaining elements. Accordingly, we shall now address the many challenges to HB 250 on the merits.

## II. IS HB 250 SPECIAL LEGISLATION UNDER § 59 OF THE KENTUCKY CONSTITUTION?

Appellants contend that HB 250 is special legislation which violates § 59 of the Kentucky Constitution. Specifically, appellants allege that the General Assembly improperly gave the power to the Robert Wood Johnson Foundation ("RWJF")[3] to select certain "governmental" officials in return for a monetary grant, which is in violation of the § 59 prohibition against special legislation. It is also alleged that the provider tax created by HB 250 violates § 59.

Appellants assert that "the Robert Wood Johnson Foundation ("RWJF") was actively involved, through grant-making and otherwise, in the process leading to the drafting and passage of HB 250. As a result, HB 250 has sections relating to agreements with a grantor of funds and contracts with an independent third party. RWJF was granted special governmental privileges and emoluments[4] purely in exchange for money." Appellants' assert that the impropriety in HB 250 is that the legislation was designed to benefit RWJF and its affiliates. Appellants thus express a misunderstanding of what is special legislation.

Section 59 of the Kentucky Constitution prohibits "local or special acts." In interpreting § 59, this Court has held that the law must apply equally to all in a class and that there be distinctive and natural reasons supporting the classification. Otherwise the legislation is constitutionally invalid and must be struck as impermissible special legislation.

Some commentators have suggested that the primary driving force behind the adoption of the 1891 Constitution was the fact that special interests were perceived as having carte blanche with the General Assembly to achieve whatever legislation they desired. Sheryl G. Snyder & Robert M. Ireland, *The Separation of Governmental Powers Under the Constitution of Kentucky: A Legal and Historical Analysis of L.R.C. v. Brown*, 73 Ky.L.J. 165 (1984–85).

> The primary purpose of Kentucky Constitution, § 59, is to prevent special privileges, favoritism and discrimination, and assure equality under the law. "A special law is a legislation which arbitrarily or beyond reasonable justification discriminates against some persons or objects and favor others." *Board of Educ. of Jefferson County v. Bd. of Educ. of Louisville*, Ky., 472 S.W.2d 496, 498 (1971).

*Kentucky Harlan Coal Company v. Holmes*, Ky., 872 S.W.2d 446, 452 (1994).

The test as to whether legislation is special was formulated by this Court in *Schoo v. Rose*, Ky., 270 S.W.2d 940 (1954). In order for legislation to be permissible under § 59 of the Kentucky Constitution: "(1) It must apply equally to all in a class, and (2) there must be distinctive and natural reasons inducing and supporting the classification." *Id.* at 941. See *Terrace v. Thompson*, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255 (1923); *Truax v. Corrigan*, 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254, 27 A.L.R. 375 (1921); *Burrow v. Kapfhammer*, 284 Ky. 753, 145 S.W.2d 1067 (1940); *Droege v. McInerney*, 120 Ky. 796, 87 S.W. 1085, 27 Ky.Law Rep.

**3.** The Robert Wood Johnson Foundation is a not-for-profit foundation whose stated mission is to improve the health and health care of the American people. The Foundation is not a party to this lawsuit.

**4.** An emolument is "[t]he profit arising from office, employment, or labor; that which is received as a compensation for services, or which is annexed to the perquisite, advantage, profit or gain arising from the possession of an office." Black's Law Dictionary, 524 (6th ed.1993).

1137 (1905); *Safety Bldg. & Loan Co. v. Ecklar*, 106 Ky. 115, 50 S.W. 50 (1899).

In *Schoo*, at issue was a law which required that prior to receiving a vehicle registration receipt or a license plate, a motorist must produce proof to the County Court Clerk that she had paid her personal property taxes due to the Commonwealth and the relevant local taxing districts. The law exempted all carriers of persons for hire who operated vehicles which carried eight or more passengers. The Commonwealth defended the law on the basis that the exempted parties were not licensed by the Clerks of the County Courts, but rather they fell within the ambit of KRS Chapter 281. The Commonwealth went on to point out that the tariffs and schedules for the carriers for hire are closely related matters which come within the ambit of the General Assembly's exercise of its police powers.

This Court held that the classification at issue was whether there was a valid reason to distinguish between the method by which licenses and registrations were issued for the vehicles of large carriers of persons and the vehicles of all other persons. The basis for this ruling was that the law in question was a revenue measure since proof of payment of taxes was required to receive the license or registration. Accordingly, whether the large carriers were controlled by the Commonwealth's police powers was not relevant to making a determination of the validity of the classification. This Court found that the only difference between the large carriers and everyone else was to whom the large carriers paid their taxes.[5] This alone was not found to be a sufficient nexus on which to base the classification in question. As a result the law was found to be unconstitutional.

Another case with instructive value with regard to § 59 is *Tabler v. Wallace*, Ky., 704

S.W.2d 179 (1985) *cert. denied* 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986). In *Tabler*, suit was brought contending that a "no action" statute[6] which provided that persons engaged in the "design, planning, supervision, inspection or construction of any of any improvement to real property" with immunity from suit for damages or injury caused by any deficiency after the expiration of five years following the completion of the project. There were actually two cases which were consolidated in a single matter before this Court. In the first, *Tabler*, a maintenance man was killed when he was crushed between the roof of the elevator shaft and the top of the elevator. In the second, *General Electric v. Nucor*, Ky., 704 S.W.2d 179 (1985) *cert. denied* 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986), the roof of a warehouse collapsed when four steel beams failed to support the weight of the roof. The defendants in both cases were granted summary judgment since in each case the plaintiff had not brought the action within five years of the completion of the project.

We held that this statute was not what it purported to be. Under the "no action" law, a party who has the misfortune to suffer an injury five years after the completion of a given building project misses the alleged "statute of limitations." Accordingly, this Court held that the statute was not one of limitation of time, but rather one of limitation of liability to certain selected persons. Since no social or economic basis was presented to justify why those parties should have their liability limited in this fashion, the only apparent basis for the "no-action" law was to protect the parties' economic self-interest. The result of the "no-action" law was that the protection of the general public was subordinated to the interest of a special group. In striking down the law, this Court held that

5. Although one group is licensed by the County Court Clerk and the other by the Department of Motor Transportation, each group is required to pay a license tax as a condition to their right to operate vehicles upon the public highways. Both are required to pay taxes upon other personal property and their property is subject to distraint and sale for nonpayment. Both may be required to assess omitted property and are liable to penalties and interest for failure to pay taxes or assess their property. From a revenue

standpoint, the only difference between the two groups is that the license tax is paid through different agencies. We do not think this single difference is sufficient to support a classification by which the Act is applicable to one class and inapplicable to the other.

*Schoo v. Rose*, Ky., 270 S.W.2d 940, 942 (1954).

6. KRS 413.135

this was precisely the evil which § 59 was designed to prevent.

■ In performing an analysis under § 59, determining whether the first prong of the test is satisfied should be a fairly straightforward matter. Either the laws do apply to everyone in the class equally or they do not. However, deciding whether the classification itself is valid can be substantially more complex. This Court will not permit a statute to survive by simply defining a class in a narrow fashion which will yield, ipso facto, a self-sustaining classification. *Kentucky Harlan Coal Company v. Holmes*, Ky., 872 S.W.2d 446 (1994) (Stephens, C.J., dissenting) (4–3 decision).

■ When asserting the validity of a classification, the burden is on the party claiming the validity of the classification to show that there is a valid nexus between the classification and the purpose for which the statute in question was drafted. There must be substantially more than merely a theoretical basis for a distinction. Rather, there must be a firm basis in reality.

■ Examining HB 250 under the standards enumerated above, we find that it clearly is not special legislation as defined by § 59 and thus is not constitutionally infirm on that basis. There is no question that the RWJF played a key role in the passage of HB 250. There is no question that RWJF sought to further its own goals by HB 250. Appellants have offered no evidence which supports their claim that the RWJF received special privileges which would constitute special legislation. Special legislation is that which favors a special interest to the detriment of the rest of society. Special legislation, as defined by § 59, is not legislation which is merely designed to further a specific purpose.

■ The fact that representations were made to the RWJF that it would have the right to select certain governmental officials might well be improper, but it does not render HB 250 unconstitutional. Nothing in HB

250 impermissibly favors the RWJF in terms of granting it the power to select governmental officials.[7] If the executive branch acted impermissibly in the execution of HB 250, then appellants may have a claim against the executive branch for that activity; however, for reasons upon which we shall not speculate, no such evidence of the RWJF actually receiving this authority was offered to us. More importantly, appellants have claimed that HB 250 was unconstitutional as enacted, not as executed.

Unlike the legislation in the cases discussed above in which § 59 was found to apply, there are clear social and economic goals which HB 250 was designed to further. Whether organizations associated with RWJF may benefit from the passage of HB 250 is clearly incidental at best to the overall purpose for which this legislation was created. We are comfortable in discerning the purpose, intent, or goal of this legislation from a common-sense reading of HB 250 itself and the events and circumstances surrounding its passage. The primary, or even secondary purpose of HB 250 is clearly the improvement of the health care system in the Commonwealth. The idea that such legislation was passed to further the economic self-interest of RWJF is quite simply unsupported by the evidence. Section 59 prohibits the passage of legislation which favors the economic self-interest of the one or few over that of the many. Therefore, HB 250 is not special legislation as defined by § 59 on that basis.

■ Appellants also assert that HB 250 is special legislation because the provider tax is based on irrational and arbitrary distinctions. We think this argument is also devoid of merit. Appellants appear to feel that they have been singled "out to bear a burden which must properly be borne by all the citizens of the Commonwealth." Appellants may indeed be correct in that they have been singled out to bear this burden in an immoral, unethical or simply wrong decision, but appellants have not shown this Court any

---

7. Nowhere in HB 250 is RWJF given the powers of appointment alleged by appellants. Appellants simply offer letters from the Governor which assure RWJF that it will be able to select certain officials. The Court advises appellants that such promises do not constitute evidence of unconstitutional behavior.

real reason why the distinction made by the legislature was unconstitutional.

Applying the test to determine if a statute is special legislation, we find that the health care provider tax of HB 250 passes this test and is constitutional. The clear intent of HB 250 was to promote health care and health care reform in general and to secure matching federal funds through a provider tax in particular. HB 250's provider tax operates against eight classes of health care items and services. These are the exact same items as those enumerated by federal law. 42 U.S.C. § 1396b(w)(7)(A). Thus, far from being random and arbitrary, the classification created by HB 250 is specifically tailored to acquire federal matching funds. Appellants assert that HB 250 violates the federal requirements for acquiring matching funds. However, they have offered no testimony, besides their own opinion, that this is the case. Appellees offer evidence that there has been no such notification by the federal government of any violation which would result in the denial of matching funds. Such a result clearly meets the economic goal of the Commonwealth in passing this legislation. The requirement that there be a valid nexus between the classification and the intent is thereby satisfied.

Although, as discussed above, appellants are not barred from bringing the instant claim by our previous adjudication in *Commonwealth, Revenue Cabinet v. Smith*, Ky., 875 S.W.2d 873, *cert. denied sub nom, Yeoman v. Kentucky*, 513 U.S. 1000, 115 S.Ct. 509, 130 L.Ed.2d 417 (1994), the precedent that case established does bind this Court. Unlike some jurisdictions, stare decisis has real meaning to this Court. Given the fact that *Smith* was decided in 1994, we can find no reason that is adequate to overcome the burden imposed by stare decisis. The provider tax in HB 1 is virtually the same as that in HB 250.[8] *See*, Kathryn L. Moore, *Taxation*, 86 Ky.L.J. 875, 889–90 (1997–98). Since the issue was resolved so recently by this Court in *Smith*, we find no compelling reason to suddenly change our decision in this matter.[9]

## III. DOES THE PROVIDER TAX IN HB 250 VIOLATE THE EQUAL PROTECTION OF THE LAWS DOCTRINE?

 Appellants assert that HB 250 violates the Equal Protection Clause of the United States and Kentucky Constitutions by creating a provider tax. Since the analysis for each is identical, we discuss the contention. Because the challenged provisions do

**8.** The only distinction between the two provider taxes is that HB 1 permitted pharmacies to pass the $0.25 per prescription tax on to insurers, health maintenance organizations, and non-profit hospital, medical-surgical, dental, and health service corporations, but did not permit these groups to pass on the tax. 1993 Ky. Acts ch. 2, § 4, now repealed. HB 250 does not allow pharmacies to pass on the tax to these third-party payers. 1994 Ky. Acts ch. 512, § 99. Other than this distinction, the two health care provider taxes are identical.

**9.** In *D & W Auto Supply v. Department of Revenue*, Ky., 602 S.W.2d 420 (1980), this Court stated: "The maxim is stare decisis et non quieta movere, which simply suggests that we stand by precedents and not disturb settled points of law." *Id.* at 424.

"This great principle, stare decisis, so fundamental in our law, and so congenial to liberty, is peculiarly important in our popular governments, where the influence of the passions is strong, the struggles for power are violent, the fluctuations of party are frequent, and the desire of suppressing opposition, or of gratifying re-

venge under the forms of law and by the agency of the courts, is constant and active." *Ex Parte Bollman and Ex Parte Swartwout*, 4 Cranch 75, 89, 2 L.Ed. 554, 559 (1807).

While, perhaps, it is more important as to far-reaching juridical principles that the court should be right than merely in harmony with previous decisions, in the light of higher civilization, later and more careful examination of authorities, wider and more thorough discussion and more mature reflection upon the policy of the law, it nevertheless is vital that there be stability in the courts in adhering to decisions deliberately made after ample consideration. *Parties should not be encouraged to seek re-examination of determined principles and to speculate on a fluctuation of the law with every change in the expounders of it.* As to many matters of frequent occurrence, the establishment of some certain guide is of more significance than the precise form of the rule, and substantial justice may often be better promoted by adhering to an erroneous decision than by overthrowing a rule once established.

*Ballard County v. Kentucky County Debt Commission*, 290 Ky. 770, 162 S.W.2d 771 (1942)(emphasis added).

not adversely affect a fundamental interest, *see, e.g., Dunn v. Blumstein,* 405 U.S. 330, 336–42, 92 S.Ct. 995, 999–1003, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 629–31, 89 S.Ct. 1322, 1328–30, 22 L.Ed.2d 600 (1969), or contain a classification based upon a suspect criterion, *see, e.g., Graham v. Richardson,* 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534 (1971); *McLaughlin v. Florida,* 379 U.S. 184, 191–92, 85 S.Ct. 283, 287–89, 13 L.Ed.2d 222 (1964), they need only be tested under the lenient standard of rationality that this Court has traditionally applied in considering equal protection challenges to regulation of economic and commercial matters. *See, e.g., Western & Southern Life Ins. Co. v. State Board of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981); *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 461–63, 101 S.Ct. 715, 722–23, 66 L.Ed.2d 659 (1981); *Kotch v. Board of River Pilot Comm'rs,* 330 U.S. 552, 564, 67 S.Ct. 910, 916, 91 L.Ed. 1093 (1947). Under that standard, a statute will be sustained if the legislature could have reasonably concluded that the challenged classification would promote a legitimate state purpose. *See, e.g., Western & Southern Life Ins. Co.,* 451 U.S., at 668, 101 S.Ct., at 2083; *Clover Leaf Creamery Co.,* 449 U.S., at 461–462, 464, 101 S.Ct., at 722, 723–24. "Legislation will be upheld under equal protection principles of the federal and state constitutions if the law is rationally related to a legitimate objective." *Waggoner v. Waggoner,* Ky., 846 S.W.2d 704, 708 *cert. denied* 510 U.S. 932, 114 S.Ct. 346, 126 L.Ed.2d 310 (1993) (*citing McGowan v. State of Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961)); *Kentucky Ass'n of Chiropractors, Inc. v. Jefferson County Medical Society,* Ky., 549 S.W.2d 817, 822 (1977). "The constitutionality of a statute will be upheld if its classification is not arbitrary, or if it is founded upon any substantial distinction suggesting the necessity, or propriety, of such legislation." *Waggoner,* 846 S.W.2d at 708.

With this standard in mind, we find that nothing in HB 250 is so irrational as to warrant a finding of unconstitutionality. Appellants argue that it is irrational and arbitrary to tax one sub-group of health care providers and not another. We do not find this argument compelling. The rational review standard is not hard for a legislature to meet. It merely requires one to postulate that the legislature could have envisioned that HB 250 would promote a legitimate state purpose—any legitimate state purpose. *Commonwealth, Revenue Cabinet v. Smith,* Ky., 875 S.W.2d 873, *cert. denied sub nom Yeoman v. Kentucky,* 513 U.S. 1000, 115 S.Ct. 509, 130 L.Ed.2d 417 (1994). Appellants' argument is essentially that this tax is unfair and therefore unconstitutional. This is not the correct standard. While this Court is loathe to engage in such platitudes as "life is not fair", the essence of our decision in this matter is that the legislature is not required to be fair or even reasonable in matters of taxation. It is simply barred from behaving irrationally or arbitrarily.

HB 250 creates a two percent (2%) provider tax on certain health care providers. The persons who are classified so as to be within the tax are those categories as designated by the federal government. 42 U.S.C. § 1396b(w). *See supra,* discussion of § 59 of the Kentucky Constitution. Appellants claim that this classification scheme is so irrational that it violates equal protection of the laws.

In this case the legislature made a distinction between those health care providers who were subject to the Provider Tax of HB 250 and those who were not. Appellants have not even begun to satisfy their burden in terms of showing that the tax in question was arbitrary or irrational. As was noted in *Regan v. Taxation with Representation of Washington,* 461 U.S. 540, 546, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983), "Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes." *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973); *Allied Stores of Ohio v. Bowers,* 358 U.S. 522, 526–527, 79 S.Ct. 437, 440, 3 L.Ed.2d 480 (1959); *Madden v. Kentucky,* 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940); *Heritage Cablevision v. Board of Supervisors,* 436 N.W.2d 37, 38 (Iowa 1989); *Revenue Cabinet v. Estate of Marshall,* Ky.App., 746 S.W.2d 408, 411 (1988).

The fact that this Court upholds the challenged legislation under the principles of equal protection of the laws should not be read as an endorsement of the legislation itself. Rather, it should simply be seen as this Court ruling on the issue of the constitutionality of the legislation under the rational review standard. *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979); *Department of Revenue v. Spalding Laundry and Dry Cleaning Co.*, Ky., 436 S.W.2d 522 (1969).

## IV. IS HB 250 A REVENUE RAISING MEASURE WHICH ORIGINATED IN THE SENATE OF THE KENTUCKY GENERAL ASSEMBLY IN VIOLATION OF § 47 OF THE KENTUCKY CONSTITUTION?

Appellants also claim HB 250 is constitutionally infirm in that it was conceived in the Senate, which is the wrong chamber of the General Assembly and thus was violative of § 47 of the Kentucky Constitution and accordingly was void *ab initio*. Appellants offer in the alternative that in the event that this Court should find HB 250 to have been validly created it is still void because the Senate's amendments to the bill were unrelated to revenue raising as required by § 47.

Under the Kentucky Constitution, "[a]ll bills for raising revenue shall originate in the House of Representatives, but the Senate may propose amendments thereto: provided no new matter shall be introduced under color of amendment, which does not relate to raising revenue." *Ky. Const.* § 47. A bill is a revenue raising measure within the ambit of § 47 when the primary purpose of that piece of legislation is to generate income. *City of Louisville v. Miller*, Ky.App., 697 S.W.2d 164, 167 (1985) (law held to be constitutional because it allowed taxes to be collected, but did not involve the levying of taxes to raise revenue); *Walton v. Carter*, Ky., 337 S.W.2d 674, 677 (1960); *Dalton v. State Property and Buildings Comm.*, Ky., 304 S.W.2d 342, 350 (1957); *Livingston v. Dunn*, 244 Ky. 460, 51 S.W.2d 450, 454 (1932).

A bill which includes a taxation scheme as an incidental part of its overall purpose is outside the realm of § 47 of the Kentucky Constitution. The provider tax portion of HB 250 is certainly not the primary or even secondary purpose of that bill. Accordingly, it is not a bill designed to raise revenue within the meaning of § 47 of the Kentucky Constitution. For a bill to fall within § 47, the primary purpose of that legislation must be to raise revenue. When this Court determines what is the primary purpose of a particular piece of legislation, it must use common sense and examine the totality of the circumstances surrounding the passage of the bill. The mere fact that legislation generates revenue is not sufficient.

The purpose of § 47 is to place within the Kentucky House of Representatives the authority to originate revenue raising legislation. To torture any other meaning out of § 47 would require us to declare void any bill coming out of the Senate which in anyway generates revenue with which to fill the coffers of the Commonwealth. Since we find that HB 250 was not a revenue raising bill within the meaning of § 47, we find that both of these arguments are devoid of merit.

Appellants' alternate argument is that the provider tax should be struck because the amendments made in the Senate were not related to revenue. Accepting, arguendo, appellants' claim that these amendments were improper, it is the amendments which are then constitutionally infirm, not the provider tax, which was part of the original bill. *Farris v. Shoppers Village Liquors, Inc.*, Ky., 669 S.W.2d 213 (1984). However, appellants have not attacked any of the amendments, but rather the provider tax, accordingly, the matter of the constitutionality of the amendments is not properly before this Court.

## V. DOES HB 250 IMPERMISSIBLY PERMIT THE DELEGATION OF EXECUTIVE AUTHORITY IN VIOLATION OF § 27?

The Kentucky Constitution creates three separate and distinct branches of government. Appellants argue that HB 250 violates the principle of separation of powers. Appellants claim that HB 250 improperly

delegates governmental authority to a non-governmental entity and that this violates the separation of powers doctrine. Specifically, appellants claim that HB 250 impermissibly permits RWJF to select the members of the Health Policy Board ("HPB").

Two sections of the Kentucky Constitution discuss the separation of powers and its operation in the government of the Commonwealth:

> The powers of the Government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of the magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

*Ky. Const.* § 27.

> No person, or collection of persons being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

*Ky. Const.* § 28.

■ However, appellants' argument that either of these sections is implicated is simply incorrect. Assuming, *arguendo*, that appellants are correct in that HB 250 does allocate executive branch authority to RWJF, then there is still no violation of §§ 27 and 28. RWJF is not a part of the governmental structure of the Commonwealth. Sections 27 and 28 regulate the distribution of power among those three branches of government.[10] However, there is a section of the constitution which this Court believes is relevant to the matter at hand: "The supreme executive power of the Commonwealth shall be vested in a Chief Magistrate, who shall be styled the 'Governor of the Commonwealth of Kentucky.'" *Ky. Const.* § 69. This section clearly grants the executive power of the Commonwealth exclusively to the Governor. Any law which infringes on the Governor's executive power would be violative of § 69. *Kentucky Ass'n of Realtors, Inc. v. Musselman,* Ky., 817 S.W.2d 213 (1991); *L.R.C. v. Brown,* Ky., 664 S.W.2d 907, 911–14 (1984).

■ If a law grants executive branch authority to either the judicial branch, legislative branch or a non-governmental person, natural or otherwise, it is in clear violation of *Ky. Const.* § 69. Appellants allege that such an improper delegation of authority was made; however, the plain language of HB 250 totally refutes this claim. HB 250, § 2(2) provides in relevant portion "[t]he [Kentucky Health Policy] board shall consist of five (5) members *appointed by the Governor.*" (emphasis added). HB 250, § 47(4) provides in relevant portion "[t]he [Kentucky Health Purchasing] alliance shall be governed by a board of directors consisting of five (5) members to be *appointed by the Governor.*" (emphasis added).

Nowhere in the statute is RWJF given the authority to appoint members of the HPB or Health Purchasing Alliance ("HPA"). The fact that the Governor offered a veto to a third party has nothing to do with the constitutionality of HB 250. The governor is free to solicit advice from whomever he wishes and to do with it whatever he may choose. Appellants would require the Governor not to interact with any of his constituents or other parties in making any executive choices, since it would be an abdication of his authority to do so. The Governor is free to solicit advice from whomever he or she sees fit.[11]

---

10. For a discussion of what does consist of the separation of powers doctrine and the violation thereof, the Court recommends reviewing its opinion in *Legislative Research Commission v. Brown,* Ky., 664 S.W.2d 907 (1984). In *Brown,* the Court was called to rule upon a statute which purported to confer certain powers upon the Legislative Research Commission. In declaring the statute unconstitutional, this Court extensively discussed the separation of powers doctrine and the critical role which it plays in the polity of the Commonwealth. *Brown,* 664 S.W.2d at 911–914.

11. The Governor is free to seek advice from his or her spouse, friends, or even a 501(c)(3) foundation which is dedicated to the betterment of the health and health care of the American people. There is no limitation, constitutional or otherwise, on whose advice the Governor is to seek in deciding who to appoint to an official position. Equally important, there is no floor or ceiling on how much weight a Governor is to put on a certain person's advice on a given matter.

As long as it is the Governor who actually exercises the power in question, then no improper delegation can occur. There is no evidence in

Appellants are absolutely correct in stating that decisions of the Supreme Court of Pennsylvania, when interpreting provisions of the Pennsylvania Constitution similar to that of the Kentucky Constitution, are very persuasive to the Courts of the Commonwealth and should be given as much deference as any non-binding authority receives. *Commonwealth v. Wasson*, Ky., 842 S.W.2d 487, 498 (1992). However, this doctrine has no application to the instant case, because HB 250 is facially valid and no further authority is required to make this determination. Accordingly, we find no impermissible delegation of executive authority.

## VI. DOES HB 250 VIOLATE THE PRIVACY RIGHTS OF THE CITIZENS OF THE COMMONWEALTH?

 Under HB 250, certain data are collected by the Health Policy Board ("HPB") and used for various purposes. Appellants claim that such collection and dissemination constitutes an impermissible violation of a patient's constitutional right to privacy. There is a threshold issue here in that physician-appellants are not claiming that their own privacy rights have been violated or that they would be forced to violate the privacy rights of the citizens of the Commonwealth, but rather that the government would violate the privacy rights of the citizens of the Commonwealth. This immediately raises the question of whether appellants have standing to challenge HB 250 on this issue.

In order to have standing in a lawsuit "a party must have a judicially recognizable interest in the subject matter of the suit." *Healthamerica Corp. v. Humana Health Plan*, Ky., 697 S.W.2d 946 (1985). The interest of a plaintiff must be a present or substantial interest as distinguished from a mere expectancy. *Winn v. First Bank of Irvington*, Ky.App., 581 S.W.2d 21, 23 (1979). *The issue of standing must be decided on the facts of each case. Rose v. Council for Better Education, Inc.*, Ky., 790 S.W.2d 186 (1989)(emphasis added); *City of Louisville v. Stock Yards Bank &*

*Trust*, Ky., 843 S.W.2d 327 (1992). Simply because a plaintiff may be a citizen and a taxpayer is not in and of itself sufficient basis to assert standing. There must be a showing of a direct interest resulting from the ordinance. *Cf. Carrico v. City of Owensboro*, Ky., 511 S.W.2d 677 (1974); *York v. Chesapeake & Ohio Railroad Co.*, 240 Ky. 114, 41 S.W.2d 668 (1931). *City of Ashland v. Ashland F.O.P # 3, Inc.*, Ky., 888 S.W.2d 667, 668 (1994)(emphasis added). An individual is not allowed to bring a challenge to a law unless that party is allegedly being injured by the law. *Winn v. First Bank of Irvington*, Ky.App., 581 S.W.2d 21, 23 (1979) (holding that a "party plaintiff must have a real, direct, present and substantial right or interest in the subject matter of the controversy"). The misuse of the taxpayers' funds is one form of an alleged injury that can take place. Accordingly, any taxpayer of the Commonwealth is permitted to sue on this basis. However, since the privacy interest advanced by appellants is not directly related to the generation or expenditure of state funds, appellants do not have standing as taxpayers to challenge HB 250. *Gillis v. Yount*, Ky., 748 S.W.2d 357 (1988); *Second Street Properties v. Fiscal Court of Jefferson County*, Ky., 445 S.W.2d 709, 716 (1969).

 Appellant Joseph Janes is a patient of one of the physicians who is also an appellant in this suit. Accordingly, since as a patient under HB 250 certain information could be collected, Mr. Janes possesses the necessary alleged injury to be permitted to challenge HB 250 on privacy grounds.

The Commonwealth has a long judicial tradition of leaving its citizens alone. *Brents v. Morgan*, 221 Ky. 765, 299 S.W. 967 (1927); *Lewis v. Commonwealth*, 197 Ky. 449, 247 S.W. 749 (1923); *Commonwealth v. Smith*, 163 Ky. 227, 173 S.W. 340 (1915); *Adams Express Co. v. Commonwealth*, 154 Ky. 462, 157 S.W. 908 (1913); *Douglas v. Stokes*, 149 Ky. 506, 149 S.W. 849 (1912); *Hershberg v. City of Barbourville*, 142 Ky. 60, 133 S.W. 985 (1911); *Foster–Milburn Co. v. Chinn*, 134 Ky. 424, 120 S.W. 364 (1909); *Common-*

the record that RWJF was given the power to submit the names of its preferred candidates

directly to the Kentucky Senate for nomination or that it actually exercised such power.

*wealth v. Campbell,* 133 Ky. 50, 117 S.W. 383 (1909);. Most recently this Court in *Commonwealth v. Wasson,* Ky., 842 S.W.2d 487, 491–92 (1992), made clear that the privacy rights guaranteed by the Kentucky Constitution exceed those granted by the United States Constitution. Accordingly, this Court takes very seriously the right of the citizens of the Commonwealth to be left alone, particularly in circumstances that involve governmental exercises of power. However, we find no such intrusion here.

■ In the instant case, the data is collected for legitimate governmental purposes, and all privacy interests of the individual are carefully shielded. Section 9(1)(a)–(b) of HB 250 specifically shields the privacy of patients by protecting all information relating to patient identity from disclosure. Unless a court issues an order, all information regarding the identity of a patient is held confidential. While in no way denigrating the importance of confidentiality of a patient's medical records, we hold that no violation of privacy rights occurs as long as the patient's identity is fully and totally shielded from public examination.

## VII. DID THE HEALTH POLICY BOARD ("HPB") MEET IN VIOLATION OF THE OPEN MEETINGS ACT?

Under the Open Meeting Act ("Act"), KRS § 61.800 *et seq.,* "[a]ll meetings of a quorum of the members of a public agency at which any public business is discussed or at which any action is taken by the agency, shall be public meetings, open to the public at all times...." The Act goes on to define twelve specific exceptions to the policy of only conducting the business of government in the full light of day, KRS § 61.810(a)–(1). To guide this Court in interpreting the Act is the legislative statement of policy, KRS § 61.800, which states that "the formulation of public policy is public business and shall not be conducted in secret" and that the exceptions to the Act are to be "strictly [and narrowly] construed."

Appellants allege that there were two specific violations of the Act by the Health Policy Board. The first occurred on August 29, 1994, in Frankfort, Kentucky, when officials of the RWJF came to conduct a site visit. The second occurred on September 28–30, 1994, in Princeton, New Jersey, at a national health care conference. For the reasons discussed below, it is rather obvious that neither instance rises to the level of a meeting within the meaning of the Act.

■ The first allegation of a violation of the Act is incorrect because at that point no member of the HPB had been confirmed by the Senate. Therefore, as a matter of law, no violation could have taken place because there were no members of the HPB. Unconfirmed nominees are not covered by the Act. The second allegation of a violation of the Act is similarly incorrect in that no public business was discussed at the conference. The mere fact that a quorum of members of a public agency are in the same place at the same time, without more, is not sufficient to sustain a claim of a violation of the Act.

■ For a meeting to take place within the meaning of the act, public business must be discussed or action must be taken by the agency. Public business is not simply any discussion between two officials of the agency. Public business is the discussion of the various alternatives to a given issue about which the board has the option to take action. Taking action is defined by the Act as "a collective decision, a commitment or promise to make a positive or negative decision, or an actual vote by a majority of the members of the governmental body." KRS § 61.805(3). The Act prohibits a quorum from discussing public business in private or meeting in number less than a quorum for the express purpose of avoiding the open meeting requirement of the Act. KRS § 61.810(2). Accordingly, since neither instance presented by appellants constitutes a meeting in violation of the Act, we find this claim to be devoid of merit.[12]

12. The record is silent as to whether appellants attempted to invoke the procedural safeguards of the Act. KRS § 61.846 & .848. The procedural safeguards provide a structure under which a party can seek to open a meeting which she feels is within the ambit of the Act. If appellants did

## VIII. DOES HB 250 IMPERMISSIBLY PERMIT THE PAYMENT OF SALARIES OF GOVERNMENTAL OFFICIALS BY ONE OTHER THAN THE COMMONWEALTH?

■ Appellants argue that HB 250 permits payment of the salaries of government officials by a party other than the Commonwealth. Appellants claim that RWJF is paying the salaries of state officials and that this payment violates *Ky. Const.* § 246 and KRS § 11A.040(5) & § 64.640. There is no language in HB 250 or any regulatory enactments pursuant thereto which give any support to this argument. There is nothing in the record which supports the allegation. Appellants claim that members of the HPB were paid in whole or in part by RWJF and simply cites, without any greater specificity, to various grant documents. The Court has reviewed these documents and finds nothing which supports appellants' claim.[13]

Public servants are just that—persons who hold governmental position acting on behalf of the public. Accordingly, they can only be paid by the public. KRS § 64.640 (payments to public officials must be made from the state treasury). Public officials cannot accept payments from any other source than the state treasury. KRS § 11A.040(5). Appellants claim that RWJF paid the salaries of various members of the HPB. Appellants appear to confuse the difference between a direct payment from a nongovernmental organization to a public official and a grant of money from a non-governmental organization to a government which is used to fund a certain program, including the salaries of the persons who execute the program. The former is unconstitutional for the reasons mentioned above, while the latter is not.

Claiming that giving a grant of money to a government to fund a program is the same as having a public official on a private organization's payroll is without basis. There is no prohibition against an organization donating money to the state, as long as the donation itself is not impermissible or for an improper purpose. The trial court made a specific finding that payments not made directly from RWJF to state employees, but rather from RWJF to state treasury to state employees. We see no reason to disturb the finding.

## IX. DOES THE HEALTH CARE PROVIDER TAX OF HB 250 VIOLATE THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION?

■ Among the provisions in HB 250 is a tax on health care providers.[14] Specifically, HB 250 creates a two percent (2%) tax on the gross receipts of enumerated health care providers, including physicians; a two and a half percent (2.5%) tax on the gross receipts of hospitals; and a twenty-five cent (25¢) tax per prescription filled. Appellants claim that the provider tax is unconstitutional because it violates the principle of equal protection of the laws and is special legislation in violation of *Ky. Const.* § 59. Since we have previously dealt with these arguments, we merely reiterate our own reasoning. *See supra*, discussion of equal protection guarantees of Kentucky and United States Constitutions. *See supra*, discussion of § 59. *See also, Commonwealth, Revenue Cabinet v. Smith*, Ky., 875 S.W.2d 873, *cert. denied sub nom Yeoman v. Kentucky*, 513 U.S. 1000, 115 S.Ct. 509, 130 L.Ed.2d 417 (1994).

seek to open either of these instances as meetings and followed the procedures outlined in KRS § 61.846 & .848 and the HPB failed to respond as required by the Act in those same provisions, then the HPB would have been per se wilful under KRS § 61.848(6). Governmental bodies cannot ignore the dictates of the Act with impunity; however, in the same vein, parties seeking to recover under the Act must make the governmental body aware that they believe the Act has been violated. Since the record is devoid of any discussion of appellants attempting to seek to open these meetings pursuant to KRS § 61.846

& .848, then we must assume that they did nothing and are thus entitled to nothing in this regard.

13. Appellants are apparently relying on the fact that certain grant documents refer to the amounts of money needed to fund various staff positions to support their claim that RWJF is directly paying state officials' salaries. We do not find this reasoning convincing.

14. The provider tax is created by HB 250 §§ .96–116.

Appellants also claim that the provider tax of HB 250 violates the Medicaid Voluntary Contribution and Provider–Specific Tax Amendments of 1991 ("Medicaid Amendments"), Pub.L. No. 102–234, codified at 42 U.S.C. § 1396b(w). Appellants fail to discuss exactly under what theory they believe that violation of a federal law invalidates a state law. But we assume they meant to mention the Supremacy Clause of the United States Constitution, which provides that federal law "shall be the supreme Law of the Land" and all state laws must operate in concert with federal law or be struck as invalid. *U.S. Const. Art. VI(2).*

The specific violation alleged of the Medicaid Amendments by the provider tax of HB 250 is that the tax fails to meet the following requirements of being: (1) Broad-based; (2) Uniformly imposed; and (3) Must hold taxpayers harmless for the costs of the tax. 42 U.S.C. § 1396b(w)(3)(B); 42 U.S.C. § 1396b(w)(3)(C); 42 U.S.C. § 1396b(w)(3)(D); 42 U.S.C. § 1396b(w)(4). If a health care related tax fails to meet these three requirements, then the amount of assistance from the federal government under this program will be lowered. 42 U.S.C. § 1396b(w)(1)(A).

As a preliminary issue, it should be noted that apparently when the United States Congress drafted the Medicaid Amendments, they considered the possibility that some states might not fully comply with its dictates. Accordingly, the law provides for the lowering of federal payments to those states. Thus, how appellants can argue that HB 250 should be stricken because it violates these amendments is beyond the comprehension of this Court. State laws that conflict with federal laws are indeed struck. However, state laws which do not conflict with federal laws are valid. In the instant case, there is no way that this Court could even begin to declare HB 250 invalid as violating the Medicaid Amendments, since it was obvious that Congress carved out a specific area for state laws to exist.

When Congress regulates an entire area of law, it is said to have pre-empted the field and left *no room* for states to regulate. Accordingly, any state laws which attempt to regulate in that particular area are per se invalid because the field is full. However, when Congress has not pre-empted an area of law, either because it simply has not regulated the entire field, or as is the present case, when it specifically carves out space for state laws to operate, such laws are not unconstitutional.

## X. IS THE TITLE OF HB 250 IN VIOLATION OF § 51 OF THE KENTUCKY CONSTITUTION BY BEING FALSE OR MISLEADING?

The final argument forwarded by appellants is that HB 250 is unconstitutional because it was not properly titled and thus violates § 51 of the Kentucky Constitution. "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." *Ky. Const.* § 51. As long as the title of the act is not false or misleading, then it is constitutional. *Commonwealth, Revenue Cabinet v. Smith,* Ky., 875 S.W.2d 873, 878 *cert. denied sub nom Yeoman v. Kentucky,* 513 U.S. 1000, 115 S.Ct. 509, 130 L.Ed.2d 417 (1994).

Construction of this section will be resolved in favor of the validity of the legislative action. *Commonwealth, Ex.Rel. Armstrong v. Collins,* Ky., 709 S.W.2d 437 (1986). As this Court stated previously in *Smith,* 875 S.W.2d at 873 "if the title [of an act] furnishes a 'clue' to the act's contents, it may pass constitutional muster." *Id.* at 878. *See Dawson v. Com, Dept. of Transp.,* Ky., 622 S.W.2d 212 (1981); *Anderson v. Wayne Co.,* 310 Ky. 597, 221 S.W.2d 429 (1949); *Talbott, Auditor of Pub. Accts. v. Laffoon,* 257 Ky. 773, 79 S.W.2d 244 (1934); *District Bd. of Tuberculosis Sanatorium of Fayette Co. v. Bradley,* 188 Ky. 426, 222 S.W. 518 (1920). The purpose of § 51 is to prevent this mislabeling of legislation so as to mislead. Unless the title of an act is wholly inaccurate so as to actually deceive, it will be held to be constitutional under § 51 of the Kentucky Constitution.

HB 250 was entitled "[a]n act relating to health care reform and providing funding therefor." Appellants stated in a conclusory fashion that this title is improper;

however, they fail to explain what makes it improper and precisely what the correct title would have been. Appellants do not suggest that anyone was deceived by the title. Rather, they merely assert that the act does not provide them with a clue about its contents. Obviously HB 250 does have to do with health care reform and its funding. Under the tests developed by decisions of this Court, we believe that the title of HB 250 complies with the requirements of § 51.

## CONCLUSION

For the reasons stated above, HB 250 is held to be constitutionally valid and the judgment of the Franklin Circuit Court is affirmed.

JOHNSTONE, J., and Special Justice RAYMOND OVERSTREET, concur.

COOPER, J., files a separate opinion concurring in result only.

WINTERSHEIMER, J., dissents and files a separate dissenting opinion. GRAVES and STUMBO, JJ., join in this dissenting opinion.

LAMBERT, C.J., not sitting.

COOPER, Justice, concurring.

I must disagree with the plurality opinion's conclusion that HB 250, which created the health provider tax, was not a revenue raising measure within the contemplation of section 47 of our Constitution. However, I agree that it would be the amendments which were introduced in the Senate, not the tax, which would be thus rendered invalid. *See Farris v. Shoppers Village Liquors, Inc.,* Ky., 669 S.W.2d 213 (1984) in which a Senate amendment unrelated to the revenue raising measure was declared invalid. Appellants are not attacking any specific provision traceable to a Senate amendment to HB 250, but are only challenging the constitutionality of the provider tax, itself. Although they assert that the Senate would not have passed the provider tax without the amendments, that assertion is supported only by supposition, not proof. It was the refusal of the House to pass the bill as amended by the Senate which resulted in the bill being referred to the free conference committee.

Accordingly, I concur in the result reached by the plurality opinion.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from that part of the majority opinion which affirms the imposition of a provider tax upon physicians which is in violation of the Kentucky Constitution because it is arbitrary and unreasonable.

The real question here is whether the method employed by the statute is fairly applied to all individuals who are required to pay the tax in a properly classified manner. As I noted in my dissent in *Commonwealth, Revenue Cabinet v. Smith,* Ky., 875 S.W.2d 873 (1994), the question of taxation is a peculiarly legislative function of government. The only role of the court is to review a specific tax on the grounds of arbitrariness or improper classification. Each case must be reviewed on a case-by-case approach.

"The power to tax involves the power to destroy," noted Chief Justice John Marshall in *McCulloch v. Maryland,* 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819). The duty of the judiciary is to distinguish between constitutional error and proper deference to the legislature. Unequal treatment should not be acceptable under any circumstances.

This appeal concerns the provider tax imposed on physicians' services pursuant to HB 250 and raises many of the same questions as *Smith, supra.* The legislation in question imposes a 2.5 percent tax on the gross receipts of hospitals, a 2 percent tax on the gross receipts of enumerated health care providers, including physicians, and a 25 cent tax per prescription filled. The taxes on health care providers fund, in part, the Kentucky Medical Assistance Program (Medicaid) which provides medical care to approximately 14 percent of the citizens of Kentucky who are indigent, aged, blind or disabled. Medicaid reimburses providers for the care of the medically needy without charge to the recipient of the service. Certainly the legislature is within its authority to provide for needy people through the use of properly appropriated tax funds.

The general public should be extremely concerned to make sure that all taxation is fairly distributed. As I observed in my dissent in *Smith*, it is not difficult to understand why taxpayers are very concerned in a society in which ordinary working people will pay in excess of 40 percent of their gross income in taxation. As further noted in my dissent in *Smith*, classification by the legislature should be affirmed except where there is no rational basis and the legislation is arbitrary.

The proper function of this Court is not to determine if this legislation is good or bad. We must confine our review to the equal and uniform application of the law and its constitutionality. We do not make policy, that is for the General Assembly. The most serious question presented by this type of appeal is the tendency to generalize. Each case must stand alone.

A careful examination must be made of the classifications made by the legislation. The problem of disparate treatment of members of a subclass is that it singles out those who do not participate in a particular program as having derived benefits therefrom. An extension of the benefits/burdens test employed by the majority in *Smith* can lead to future assignments of tax revenue from contractors, engineers and architects who could possibly benefit by providing construction for highway work. The same analysis could be applied to lawyers who benefit from the justice system. The list of potential troublesome, unequal classifications is endless.

The assertion that HB 250 is primarily a health care reform bill and as such, its manner of enactment is not a concern of constitutional magnitude, is lacking in merit. The provider tax is a critical portion of and the primary focus of the legislation. There is a listing of more than 18 other titles included in the lengthy health care reform bill but funding is essential to achieve any of the legitimate goals announced in the preamble. This situation is not one in which the statute merely raises revenue incidental to other purposes in the statute under review.

All classifications must be based upon reasonable and natural distinctions and must have a reasonable basis upon which to rest

and not a merely arbitrarily declared one with no factual support. *Cf. Priest v. State Tax Com'n*, 258 Ky. 391, 80 S.W.2d 43 (1935). As early as *Commonwealth v. Payne Medicine Co.*, 138 Ky. 164, 127 S.W. 760 (1910), this Court held that disparate treatment of persons selling medicines was in violation of the Equal Protection Guaranties found in Section Three of the Kentucky Constitution.

Here, the provider tax system is arbitrary and discriminatory taxation prohibited by Sections One, Two, Three and Fifty-nine of the Kentucky Constitution. The statute imposes a tax on a certain very narrow subgroup of health care providers for the alleged purpose of improving federal participation. However, no additional tax is imposed on other members of the subclass. The burden of obtaining matching federal funds should be borne uniformly.

Under the statute, only pharmacy prescriptions, nursing facility services, intermediate care services for the mentally retarded, physician services and free-standing psychiatric hospitals, in certain circumstances, are required to make a forced contribution to general government revenues. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 163, 101 S.Ct. 446, 452, 66 L.Ed.2d 358, 366 (1980). This legislation exempts from the provider tax many health care providers, the majority of which receive Medicaid reimbursement. The legislation arbitrarily discriminates both in favor of and against certain subgroups of health care providers.

In addition, the provider tax system of this statute differs from the provider tax system of HB 1, in that it taxes a subgroup of health care providers in a manner not coextensive with the federal statutes and regulations. In *Smith*, HB 1 taxed all health care providers permitted to be taxed under the federal statute and regulations which defined the class to be taxed. In this legislation, the federally defined class has been subdivided into two subclasses, one required to bear a heavy financial burden and the other exempt from that burden. There is no rational basis for dividing the class of health care providers

permitted to be taxed under the federal law into such subclasses.

Many health care providers exempt from taxation under the system of HB 250 receive Medicaid funds and are not required to assume any of the burden of the provider tax. This is clearly an arbitrary classification of taxation and is in violation of the Kentucky Constitution.

GRAVES and STUMBO, JJ., join in this dissent.