RENDERED: FEBRUARY 5, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1283-MR

ANNE LEONHARDT          APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE THOMAS L. TRAVIS, JUDGE
ACTION NO. 19-CI-02450

JONATHAN LANG AND
STEVE MAYNARD          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, KRAMER, AND MAZE, JUDGES.

MAZE, JUDGE: Anne Leonhardt appeals an order of the Fayette Circuit Court dismissing her complaint as barred by the doctrine of *res judicata*. Finding no error in the decision of the circuit court, we affirm.

While attending an event at the Kentucky Horse Park in July 2018, appellant Leonhardt alleges she was injured as she stepped off the stadium seating

area.  Leonhardt asserts that a gap in the corners of the horseshoe-shaped seating area, which has been present since the construction of the structure in 1991, is a building code violation which contributed to her injury.  Although the Horse Park denied that the condition of the structure constitutes a building code violation, that question is immaterial to the *res judicata* issue raised in this appeal.

An understanding of the procedural posture of this case is essential to our analysis.  Because the injury allegedly sustained in the incident at the Horse Park falls within the category of ordinary negligence claims, the jurisdiction of the Kentucky Claims Commission pursuant to KRS[1] 49.020(1) would appear to be implicated:[2]

> The Kentucky Claims Commission created by KRS 49.010 shall have the following powers and authority:
>
> (1) **To investigate, hear proof, and compensate persons for damages sustained to either person or property as a proximate result of negligence on the part of the Commonwealth, any of its cabinets, departments, bureaus, or agencies, or any of its officers, agents, or employees while acting within the scope of their employment by the Commonwealth or**

---

[1] Kentucky Revised Statutes.

[2] On August 8, 2016, Governor Matt Bevin issued Executive Order 2016-576, which reorganized part of the Public Protection Cabinet to combine the Board of Claims, the Board of Tax Appeals, and the Crime Victims' Compensation Board to form the Kentucky Claims Commission.  The General Assembly approved this reorganization through the passage of 2017 Kentucky Acts ch. 74.  Effective June 29, 2017, claims which previously would have fallen under the purview of the Board of Claims are within the jurisdiction of the Claims Commission.  *See*, *Kroger Limited Partnership I v. Boyle Cty. Prop. Valuation Adm'r*, 610 S.W.3d 332, 335 n.1 (Ky. App. 2020).

**any of its cabinets, departments, bureaus, or agencies**;
except, however, regardless of any provision of law to
the contrary, the Commonwealth, its cabinets,
departments, bureaus, and agencies, and its officers,
agents, and employees, while acting within the scope of
their employment by the Commonwealth or any of its
cabinets, departments, bureaus, or agencies, shall not be
liable for collateral or dependent claims which are
dependent on loss to another and not the claimant,
damages for mental distress or pain or suffering, and
compensation shall not be allowed, awarded, or paid for
such claims for damages. Furthermore, any damage
claim awarded shall be reduced by the amount of
payments received or the right to receive payment from
workers' compensation insurance; Social Security
programs; unemployment insurance programs; medical,
disability, or life insurance programs; or other federal or
state or private program designed to supplement income
or pay claimant's expenses or damages incurred. . . .

(Emphasis added.) Rather than pursue a Claims Commission action against the

Commonwealth as owner and operator of the Horse Park, Leonhardt chose instead

to file a separate circuit court action against employees of that entity in their

individual capacities. In an amended order entered July 25, 2019, the circuit court

reiterated that Leonhardt's action, filed against Laura Prewitt, the Executive

Director of the Horse Park, and another "Unknown Defendant," had been

dismissed on the basis that "nothing in the Kentucky Horse Park's enabling

statutes, KRS 148.258 through KRS 148.320, nor its Administrative Regulation

300 KAR[3] 7:010, creates a ministerial duty upon any employee of the Kentucky

---

[3] Kentucky Administrative Regulations.

Horse Park to *administer* the Kentucky Building Code." That amended order

clarified the rationale underpinning its previous dismissal order and offered the

following well-reasoned analysis:

> Plaintiff's first theory of liability is that one or more of the directors or managers at the Kentucky Horse Park has a "ministerial duty" to *comply* with the Kentucky Building Code. While all building owners must *comply* with the Kentucky Building Code, the duty to *administer* the Kentucky Building Code falls upon the Kentucky Department of Housing, Buildings and Construction, or as may be delegated to a local government codes enforcement office, pursuant to KRS 198B.050(1). This is reinforced by KRS 56.491(2) which expressly requires large construction projects to be reviewed by the Department of Housing, Buildings and Construction (versus relying solely on local government codes enforcement). The suggestion that program managers at the Kentucky Horse Park who: were hired to run an equine program; who may have no experience in construction or building codes; and were hired 25 years after the construction of a building, now have their personal assets at risk due to the design and construction of a building 25 years earlier is incongruous with good public policy.

Secondly, the circuit court rejected Leonhardt's contention that the

"firm" occupying the Horse Park property should be found to have a duty to

maintain compliance and correct violations of the Kentucky Building Code.

Holding that KRS 56.463(7) grants control over all construction and maintenance on

state property to the Finance and Administration Cabinet, not to the program

managers of any agency occupying a particular parcel of state land, the court found

that the "firm" occupying the Horse Park property is the Commonwealth of Kentucky, not Executive Director Prewitt nor any other Horse Park employee, and it ultimately concluded that "[if] the Plaintiff has a negligence claim against the Commonwealth for the condition of its premises, her remedy lies with the Kentucky Claims Commission pursuant to KRS 49.010, *et seq.*"

In the period between the dismissal of the original claim on May 15, 2019, and the July 25, 2019, entry of the amended order on Leonhardt's motion to alter, amend, or vacate, she filed a second action in a different division of Fayette Circuit Court naming appellee Jonathan Lang, Deputy Director of the Horse Park, and appellee Steve Maynard, its Branch Manager for Maintenance, as defendants in their individual capacities. In response, Lang and Maynard asserted that Leonhardt's claims of negligence and premises liability in this second action were barred by the doctrine of *res judicata*. Arguing that because they were the "Unknown Defendant" named in the previous action and that their identity had been known to Leonhardt since February 2019, Lang and Maynard insisted that her failure to add them as defendants in the first suit bars her assertion of claims against them in this second action.

Citing *Yeoman v. Commonwealth, Health Policy Board*, 983 S.W.2d 459 (Ky. 1998), the circuit court held that both the claim preclusion and issue preclusion prongs of the *res judicata* doctrine were fatal to Leonhardt's second

action.  As to claim preclusion, the court found that the parties in both cases were effectively identical:  Leonhardt is the plaintiff in both actions and Lang and Maynard, the sole defendants in the second case, fill the role of "Unknown Defendant" in the first case.  The circuit court explained that Leonhardt asserted in her initial complaint that the "Unknown Defendant is an individual who was an agent of [the Kentucky Horse Park] and is responsible for ensuring the [Kentucky Horse Park] is in compliance with all safety codes and regulations or in the alternative failed to assign someone the duty of being in charge of ensuring compliance with minimal safety standards."  Similarly, the circuit court found that in the second action, Leonhardt alleged that defendants Lang and Maynard had a duty "to maintain the stadium seating area at the [Kentucky Horse Park] in compliance with all applicable codes and regulations at the time of [her] injury." The circuit court also found that the identical ultimate issue in both cases had been decided on the merits in the first action.  Thus, the circuit court concluded that because both prongs of the doctrine had been satisfied, *res judicata* operated to bar the claims Leonhardt advanced in her second action. We agree.

Returning to *Yeoman*, our Supreme Court has clearly defined the purpose and proper application of *res judicata*, focusing on the doctrine's component parts of claim preclusion and issue preclusion:

> The rule of *res judicata* is an affirmative defense
> which operates to bar repetitious suits involving the same

cause of action. The doctrine of *res judicata* is formed by two subparts: 1) claim preclusion and 2) issue preclusion. Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action. The issues in the former and latter actions must be identical. **The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts. If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action.**

For claim preclusion to bar further litigation, certain elements must be present. First, there must be identity of the parties. Second, there must be identity of the causes of action. Third, the action must have been resolved on the merits. The rule that issues which have been once litigated cannot be the subject matter of a later action is not only salutary, but necessary to the speedy and efficient administration of justice.

983 S.W.2d at 464-65 (citations and footnote omitted) (emphasis added).

In this appeal, Leonhardt advances two arguments to support her contention that the circuit court erred in dismissing her case as barred by *res judicata*: 1) that the claim preclusion prong has not been satisfied because the Unknown Defendant in the initial litigation is not the same as the named defendants Lang and Maynard in the current litigation; and 2) that the issue preclusion prong has not been satisfied because the claims litigated in the two actions are distinct.

-7-

We first examine the argument that appellees Lang and Maynard cannot be considered to be the Unknown Defendant in the prior litigation.

Leonhardt asserts that her complaint in the first litigation described the Unknown Defendant as

> an individual who was an agent of the Kentucky Horse Park and is responsible for ensuring the Kentucky Horse Park is in compliance with all safety codes and regulations or in the alternative failed to assign someone the duty of being in charge of ensuring compliance with minimal safety standards.

In Leonhardt's view, this description necessarily dictates that the Unknown Defendant was someone who had been directly assigned specific compliance responsibilities and insists that appellees Lang and Maynard do not fit this description.

In her complaint in the second action, Leonhardt averred that because there was a vacancy in the position of Divisional Director of Building and Maintenance at the Horse Park, the duty to interpret and enforce all regulatory and code compliance regarding the facility would have fallen to Executive Director Prewitt, Deputy Director Lang, or Branch Manager Maynard. Consequently, Leonhard posits that the Unknown Defendant in the first suit referred to a specific person, the Divisional Director of Building and Maintenance, and that it did not and could not have referred to Lang and Maynard because they had different job descriptions. Under Leonhardt's theory, because Lang and Maynard were

fulfilling the responsibilities of Divisional Director of Building and Maintenance only because that position was vacant at the time of her injury, they could not be considered to have been specifically assigned those duties. In our opinion, that assertion is a distinction without a difference. It seems clear that the Unknown Defendant was intended to identify the person or persons carrying out the Divisional Director's responsibilities while the position was vacant.

We are similarly unpersuaded by Leonhardt's contention that her failure to specifically name Lang and Maynard in the first action precludes the application of *res judicata* in the second action. As the circuit court specifically found, Leonhard was aware of Lang's and Maynard's identities in February 2019, after she had filed an Open Records[4] request, well before the entry of the May 15 order of dismissal. Thus, we concur in the circuit court's assessment that her election not to name them in the prior action does not preclude application of the claim preclusion prong of the *res judicata* doctrine. As our Supreme Court emphasized in *Yeoman*, "[i]f the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action." 983 S.W.2d at 465. Even if we were to conclude that Lang and Maynard are not the Unknown Defendant, we are

---

[4] Kentucky Open Records Act, KRS 61.870, *et seq.*

convinced that Leonhardt could and should have prosecuted any claims she might have against them in her initial action.

Turning next to the circuit court's decision that issue preclusion also applies to bar Leonhardt's claim, we again find no error. Contrary to Leonhardt's insistence that the issues in the two cases are not identical, the circuit court specifically determined that "the ultimate issues in both cases are whether the named Defendants had a ministerial duty to ensure compliance with Kentucky's building code and whether the Defendants were negligent in doing so." Because those issues were fully litigated in the initial action and decided adversely to Leonhardt, the circuit court did not err in concluding that the issue preclusion prong of *res judicata* bars relitigation of those claims in this second case.

A plaintiff cannot avoid application of the *res judicata* doctrine by simply couching the same assertions arising from the same set of facts in slightly different terms. Like the circuit court, we perceive no real difference in the issues Leonhard advanced in the initial action and those asserted in her second complaint. This view of the identity of the causes of action Leonhardt pressed in each of her two cases falls squarely within our Supreme Court's recent reiteration of the factors to be considered in determining whether *res judicata* operates as a bar to a subsequent action:

> As stated before, for claim preclusion to apply, identity of causes of action must exist. Kentucky follows

the "transactional approach" in determining whether identity of causes of action exists. "This Court's "task is to 'compare the factual issues explored in the first action with the factual issues to be resolved in the second.'" "[T]he test for 'common nucleus of operative fact' as defined for purposes of res judicata is not simply one of whether the two claims are related to or may materially impact one another." "[T]he connection between the core facts of the [prior] suit . . . and the core facts of the [current suit cannot be] too attenuated[.]" "If the factual scenario of the two actions parallel, the same cause of action is involved in both."

*Lawrence v. Bingham Greenebaum Doll, L.L.P.*, 599 S.W.3d 813, 826 (Ky. 2019) (footnotes omitted).

Accordingly, because we find no error in the decision of the Fayette Circuit Court concerning the application of the doctrine of *res judicata*, we affirm its decision in this appeal.

CALDWELL, JUDGE, CONCURS.

KRAMER, JUDGE, CONCURS IN RESULT ONLY.

BRIEF FOR APPELLANT:

M. Stanley Goeing
Matthew S. Goeing
Lexington, Kentucky

BRIEF FOR APPELLEES:

Evan B. Jones
Frankfort, Kentucky