RENDERED: MAY 20, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0927-MR

MEREDITH L. LAWRENCE, P.S.C.,
CREDITOR; LAW WAL, LLC;
MEREDITH L. LAWRENCE,
CREDITOR; MEREDITH L.
LAWRENCE, INDIVIDUALLY, LLC
MEMBER; AND RACERS PITSTOP
GRILLE, LLC                                                                          APPELLANTS


                              APPEAL FROM GRANT CIRCUIT COURT
v.                            HONORABLE R. LESLIE KNIGHT, JUDGE
                                      ACTION NO. 20-CI-00130


THE ESTATE OF ROBERT R.
WALLACE; AMBER WALLACE
HOWELL, CO-EXECUTOR; AND
ROBERT JASON WALLACE, CO-
EXECUTOR                                                                              APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, MAZE, AND McNEILL, JUDGES.

GOODWINE, JUDGE: LAW WAL, LLC; Racers Pitstop Grille, LLC; and

Meredith L. Lawrence (collectively "Lawrence") appeal from the summary

judgment entered by the Grant Circuit Court dismissing his claims against the

Estate of Robert R. Wallace and its executors (collectively "Wallace"). After

careful review, we affirm.

## BACKGROUND

Facts relevant to this matter were set forth as follows in a prior appeal:

> In September of 1998, Meredith L. Lawrence and Robert R. Wallace formed a limited liability company ("LLC") together. They named the company LAW/WAL LLC. In February of 2000, they formed a second LLC, Racers Pitstop Grill, LLC ("Racers"). Pursuant to the operating agreements, Lawrence and Wallace were the only members of the LLCs with each owning a fifty percent interest in each LLC.

> Racers operated a gentlemen's club and a restaurant out of a building it leased from LAW/WAL. LAW/WAL operated a hotel in an adjacent building. LAW/WAL leased both buildings from Lawrence. In the early 2000s, the LLCs secured two loans from First Farmers Bank of Owenton ("Bank"). The first loan was in the amount of $1.2 million. Wallace and Lawrence provided personal guarantees on this loan. The second loan was in the amount of $100,000.

> In 2004, Lawrence and Wallace decided to cease doing business together because they could not agree on what type of businesses would be successful at their locations moving forward. Ultimately, Lawrence agreed to buy out Wallace's interests in both LLCs. On November 1, 2004, Wallace and Lawrence executed a written agreement titled "Contract for Sale and Purchase

-2-

of All Interests of Robert R. Wallace in LAW/WAL, LLC and Racers Pit Stop, LLC" ("Sales Agreement"). Under the terms of the Sales Agreement, Lawrence agreed to pay Wallace $400,000 for his interests in the businesses. Payment was to be made as follows: 1) $40,000 upon execution of the Sales Agreement; and 2) the remaining $360,000 payable in nine equal installments of $40,000 plus interest at the then-current prime interest rate. The first installment for principal and interest was to be paid on November 1, 2005, with additional payments to be made each succeeding year until paid in full. Section 3 of the Sales Agreement contained a contingency provision. Under this provision, the agreement would become "null and void" if the Bank would not release Wallace's personal guarantees.

Lawrence made the initial $40,000 payment on November 1, 2004, the same day the parties executed the Sales Agreement. At the same time, he executed a promissory note in favor of Wallace for the balance of the purchase price. After receiving the initial payment and promissory note, Wallace relinquished all his ownership interests in the businesses to Lawrence.

Thereafter, Lawrence approached the Bank about releasing Wallace's personal guarantee; it refused to do so. Lawrence told Wallace about the Bank's decision approximately a week after they had signed the Sales Agreement. Wallace allegedly told Lawrence that he trusted Lawrence to make the payments to the Bank and would go through with the sales even without a release from the Bank.

Pursuant to the terms of the Sales Agreement, Lawrence was supposed to make the first of the nine $40,000 installment payments to Wallace on November 1, 2005. He failed to do so. As a result, in February of 2006, Wallace filed a civil lawsuit for breach of contract against Lawrence in Gallatin Circuit Court ("2006 Civil Action"). Lawrence filed an answer and counterclaim.

In his counterclaim, Lawrence alleged that Wallace committed fraud in connection with the Sales Agreement by concealing business debts and fabricating assets. He also alleged that Wallace was aware that the manager of the two businesses was going to quit after the businesses were sold to Lawrence, but hid this fact from Lawrence. Lawrence further alleged that Wallace breached the contract by engaging in activities that harmed the two businesses contrary to a specific agreement and understanding between the parties at the time the businesses were organized. Several years of litigation ensued.

In 2007, while the 2006 Civil Action was still ongoing, the larger of the two notes to the Bank came due. Lawrence requested Wallace to assist in refinancing or otherwise renewing the note. Wallace refused on the basis that he no longer had an interest in the LLCs. Lawrence ultimately purchased both notes from the Bank. However, the Bank would not assign Wallace's personal guaranty to Lawrence. This had the practical effect of extinguishing Wallace's personal guarantee.

In March of 2009, as part of the 2006 Civil Action, Lawrence filed an amended counterclaim against Wallace. The amended counterclaim alleged tortious and intentional violation of Wallace's duty of good faith and fair dealing and intentional breach of fiduciary duty, related to Wallace's refusal to remain obligated on the LLCs' loans. The next month, on April 27, 2009, the parties and their counsel conducted a settlement conference at the office of Lawrence's then-attorney. Following day-long talks, the parties and their counsel ultimately executed a document styled "Memorandum of Full and Final Settlement" ("Settlement Agreement"). Therein, the parties agreed to resolve the 2006 Civil Action and modify their prior Sales Agreement. As part of the Settlement Agreement, Lawrence agreed to pay Wallace a total $175,000. The agreement set forth a payment schedule: 1) $100,000 was due by May 7,

2009; and (2) the remaining $75,000 by May 1, 2010. In return, Wallace again agreed to convey all of his interest in the two LLCs to Lawrence, effective November 1, 2004, and Lawrence again agreed to hold Wallace harmless and blameless for any of the businesses' debts. The Settlement Agreement further provided that the parties would file an agreed judgment and agreed order of dismissal in the 2006 Civil Action within sixty days. This clause specified that the agreed judgment "shall contain a full release by Wallace and Lawrence to the other for all claims related to these LLCs, which have been asserted or that could have been asserted by either party against each other."

Lawrence made the first payment of $100,000 as agreed. However, the parties did not file the agreed order of judgment and dismissal in a timely manner. Instead, according to Wallace, the parties agreed to leave the 2006 Civil Action open so that Lawrence's counsel could move to compel a fact witness, Donna Bond, Lawrence's former employee and bookkeeper, to provide additional deposition testimony. While Ms. Bond had previously been deposed, she had refused to answer some questions. Allegedly, Lawrence wanted the deposition completed with answers to these discreet questions because Ms. Bond had previously testified before a federal grand jury in connection with a criminal investigation of Lawrence's federal income taxes.

Even though the 2006 Civil Action had not been formally dismissed as specified by the Settlement Agreement, on May 1, 2010, Lawrence sent Wallace and his attorney a check for $75,000. The memo line of the check contained the following handwritten notation: "Settlement of Litigation Dispute C/A 06-CI00029 ONLY, Full & Final Payment." Even though Lawrence made the final payment pursuant to the terms of the Settlement Agreement, for reasons that are not entirely clear from the record, the parties failed to seek an agreed judgment and order of dismissal from the trial court.

-5-

Although the 2006 Civil Action was technically still on the trial court's active docket, the parties did not make any additional filings. In April of 2011, the 2006 Civil Action came up for review pursuant to CR[1] 77.02(2). As required by the Rule, the trial court sent notices to the parties that the 2006 Civil Action would "be dismissed in thirty days for want of prosecution except for good cause shown." *Id.* The parties did not respond to the trial court's CR 77.02(2) notice. Accordingly, by order entered July 21, 2011, the trial court dismissed the 2006 Civil Action without prejudice; its only option under CR 77.02(2).

Following execution of the Settlement Agreement, Lawrence operated the LLCs without Wallace's involvement or financial assistance. During this time period, Lawrence repeatedly represented that he was the sole owner of the LLCs. This is confirmed in various filings with the Kentucky Secretary of State. Ultimately, Lawrence dissolved Racers in June of 2011. Later that same year, he sold LAW/WAL to Scott Vogeler. Documents associated with sale denote Lawrence as the sole owner. Subsequently, Vogeler filed bankruptcy on behalf of LAW/WAL. Lawrence repurchased LAW/WAL and its remaining assets out of bankruptcy.

Almost a full five years after execution of the Settlement Agreement, on or about April 22, 2014, Lawrence filed a new civil action against Wallace in Gallatin Circuit Court ("2014 Civil Action"). The new action, like the prior one, involved the sale of Wallace's interests in the LLCs to Lawrence. In his complaint, Lawrence took the position that Wallace was still a part owner of the LLCs. Even though Lawrence acknowledged the existence of the Settlement Agreement, he averred that it ended with only the "interests of Wallace's LLC personal property being purchased" by Lawrence. He further alleged that "no

---

[1] Kentucky Rules of Civil Procedure.

final accounting, settlement, dismissal of the civil suit or full and final releases were ever accomplished." To this end, Lawrence alleged that Wallace breached the LLCs' operating agreements because he failed to make capital contributions to the LLCs. Lawrence also alleged that Wallace was liable for fraud in the inducement, misrepresentation, unjust enrichment, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress.

Citing the parties' prior Settlement Agreement, Wallace filed an answer in which he denied that he was liable to Lawrence. Wallace asserted that by virtue of the Settlement Agreement, he sold all his interest in the LLCs to Wallace and was not liable for any of the LLCs expenses or debts. Wallace also asserted a number of affirmative defenses. He also filed counterclaims against Lawrence seeking a declaratory judgment that the Settlement Agreement is an enforceable written document binding on both Wallace and Lawrence that barred Lawrence's new complaint against him. In the alternative, Wallace alleged related claims grounded in equitable estoppel, fraud, and breach of contract.

On the motion of counsel, the LLCs were permitted to join the 2014 Civil Action as intervening plaintiffs on the basis that their interests could be affected by the outcome of the litigation between Lawrence and Wallace. *See* CR 24.01. At that time, the LLCs did not allege any independent claims against Wallace.

On December 1, 2015, Wallace filed what was styled as a "motion to enforce settlement agreement." Wallace asserted in his motion that the Settlement Agreement was a legally binding contract that precluded Lawrence from pursuing the claims set forth in the 2014 Civil Action. In his response, Lawrence countered that the Settlement Agreement was not enforceable and noted that the 2006 Civil Action was dismissed without prejudice. Lawrence also noted that "[i]nsofar as the

-7-

motion to enforce may be considered a motion for summary judgment then CR 56 applies and discovery must be permitted." Even though Lawrence represented in his response that additional discovery was necessary before the trial court could treat Wallace's motion to enforce as one for summary judgment, Lawrence filed his own motion for summary judgment on December 30, 2015. Therein, Lawrence requested the trial court to grant him summary judgment on his claims against Wallace on the basis that there were no disputed issues of material fact.

Ultimately, the trial court construed Wallace's motion to enforce the Settlement Agreement as a motion for summary judgment. After reviewing the record, the court determined that there were no material issues of disputed fact with respect to the validity of the Settlement Agreement. The court pointed out that it was undisputed that Lawrence made the two payments required by the Settlement Agreement to Wallace who accepted them, and that Lawrence subsequently represented that he was the sole owner of the LLCs on a purchase contract and on a bankruptcy petition. As a matter of law, the trial court concluded that Lawrence waived any and all claims he could have brought against Wallace in connection with Wallace's ownership and sale of his interests in the LLCs. As a result, the trial court entered a final and appealable summary judgment order in favor of Wallace.

*LAW/WAL LLC v. Wallace*, No. 2016-CA-000358-MR, 2019 WL 103960, *1-4

(Ky. App. Jan. 4, 2019) (footnotes omitted). On appeal in the 2014 Civil Action,

this Court upheld the summary judgment.

While that appeal was pending, Lawrence filed a third civil action

(hereinafter "the 2017 Civil Action") against Wallace. Therein, Wallace moved

for summary judgment arguing Lawrence's claims were barred by *res judicata*.

The trial court agreed and granted summary judgment. Lawrence again appealed.

This Court affirmed the trial court's grant of summary judgment

because Lawrence's claims were barred by *res judicata*. This Court held

> [t]he current action clearly arises from the same
> transactional nucleus as the 2014 Civil Action. The bank
> loans and guaranty raised in the current action are the
> same as those addressed in the prior action. As the trial
> court noted, the issues raised in the current action were
> actually litigated and decided on the merits in the 2014
> Civil Action. Both Lawrence and the LLCs had the
> opportunity to fully litigate those issues in that action.

*LAW-WAL, LLC v. Howell*, No. 2018-CA-000934-MR, 2020 WL 4557860, \*5

(Ky. App. Jul. 17, 2020).

While the appeal of the 2017 Civil Action remained pending,

Lawrence filed this action in the Grant Circuit Court (hereinafter "the 2020 Civil

Action").[2] In his complaint, Lawrence claimed breach of contract, violations of

Kentucky LLC statutes, breach of fiduciary duties, breach of good faith,

contribution, and requested an accounting. Record ("R.") at 9-10. Lawrence's

arguments are premised on his assertion that Wallace is liable to him for the debts

and obligations of the LLCs even though Wallace's ownership in the LLCs was

terminated on November 1, 2004 and, under the terms of the Settlement

---

[2] While the 2017 Civil Action was on appeal, Wallace died, and his estate and its executors were
substituted as parties to the appeal. They are now parties to this action.

Agreement, he ceased to have any managerial, fiduciary, or financial past, present, or future obligations to them. *LAW/WAL LLC*, 2019 WL 103960, at *6.

Again, Wallace moved for summary judgment arguing the applicability of *res judicata*. The trial court granted summary judgment, finding both claim and issue preclusion applied to this matter. The court explained

> [Lawrence has] failed to show how [his] claims in this case are in any way distinct from those that the Gallatin Circuit Court and the Court of Appeals have already twice rejected. Simply put, the Settlement Agreement is binding and enforceable, and it extinguished Wallace's liability to Lawrence as of November 1, 2004. That issue has been fully litigated and actually decided in prior litigation, and this [c]ourt must follow those decisions. Furthermore, all of the civil actions discussed above "ar[o]se from the same transactional nucleus of facts," and therefore "every matter which was or which could have been brought in support of the cause of action" must be deemed to have been adjudicated and therefore precluded from further litigation.

R. at 1066-67. The trial court subsequently denied Lawrence's motion to alter, amend, or vacate the summary judgment. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is proper only where, "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor against the movant." *Isaacs v. Sentinel Insurance Company Limited*, 607 S.W.3d 678, 680 (Ky. 2020) (citation omitted).

-10-

"The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citations omitted). "Because summary judgments involve no fact finding, this Court will review the [trial] court's decision *de novo*." *Isaacs*, 607 S.W.3d at 681 (citation omitted).

## ANALYSIS

> The rule of res judicata is an affirmative defense which operates to bar repetitious suits involving the same cause of action. The doctrine of res judicata is formed by two subparts: 1) claim preclusion and 2) issue preclusion. Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action. The issues in the former and latter actions must be identical. *The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts. If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action.*

*Yeoman v. Commonwealth*, 983 S.W.2d 459, 464-65 (Ky. 1998) (emphasis added) (internal citations and footnote omitted).

This action undoubtedly arises for the same transactional nucleus of facts as the 2014 and 2017 Civil Actions. As in his appeal in the 2017 Civil

Action, Lawrence now argues against the enforceability of the Settlement

Agreement and claims Wallace defaulted on his obligations under the Settlement

Agreement. These issues were raised, fully litigated, and decided on their merits in

the 2014 Civil Action.

Like in the 2014 Civil Action, here, "[t]he validity and enforceability

of the Settlement Agreement [is] dispositive of the pending claims." *LAW/WAL*

*LLC*, 2019 WL 103960, at *5.

> Under the terms of the Settlement Agreement, Wallace
> sold all his interests in both LLCs to Lawrence effective
> November 1, 2004. Wallace ceased all ownership in the
> LLCs as of that date, and pursuant to the terms of the
> Settlement Agreement had no managerial, fiduciary or
> financial past, present or future obligations with respect
> to the LLCs. Additionally, Wallace and Lawrence
> agreed to settle and/or waive all claims associated with
> the 2006 Civil Action and the LLCs that were brought or
> could have been brought. Those claims sounded in tort
> and contract and arose out of Wallace's involvement with
> and sale of his interests in the LLCs.

*Id.* at *6. Because the facts on which this action is premised are identical to those

in the prior civil actions, Lawrence's claims herein are clearly barred by both claim

and issue preclusion.

Furthermore, Lawrence's argument that *res judicata* does not bar his

claim for contribution because it had not yet accrued when the 2014 Civil Action

was decided is meritless. He made an identical claim in the 2017 Civil Action.

Therein, the Gallatin Circuit Court found the claim would have accrued no later

than February 29, 2008, well before the 2014 Civil Action was filed, and was barred because it arose from the same transactional nucleus of facts which formed the basis of the prior civil actions. R. at 211-12. This Court subsequently affirmed the trial court's determination that *res judicata* barred Lawrence's claim for contribution. *LAW-WAL, LLC*, 2020 WL 4557860, at *5. On this basis, Lawrence's claim for contribution in this action is barred by *res judicata*.

Lawrence's remaining arguments against application of *res judicata* are without basis in law. His repeated claims regarding various sections of KRS[3] Chapter 275 relating to formation, operation, and winding-up of LLCs are barred. Kentucky's LLC statutes do not allow for successive claims based on the same issues. *Id*. Additionally, in the 2006 Civil Action, as part of the Settlement Agreement, the parties agreed to settle or waive all claims related to the LLCs which had been or could have been brought. *LAW/WAL LLC*, 2019 WL 103960, at *6.

Furthermore, despite Lawrence's argument to the contrary, no material issues of fact remain in this matter. Where *res judicata* bars claims, there are no material issues of fact to resolve. By the same reasoning, additional discovery is not necessary to determine any issue in this matter. *See Id.* at *5.

---

[3] Kentucky Revised Statutes.

Finally, Lawrence's argument that the claims raised herein are somehow distinct from those made in the prior actions because they were brought against Wallace's estate rather than Wallace as an individual is without basis in law. This action could only be brought against the estate because Wallace is now deceased. However, Lawrence's claims are identical to those raised in the 2014 and 2017 Civil Actions and relate to the same transactional nucleus of facts from which those actions, as well as the 2006 Civil Action and Settlement Agreement arose. The fact that Wallace's death necessitated that the suit be brought against his estate does not prevent application of *res judicata*.

## CONCLUSION

Based on the foregoing, we affirm the summary judgment of the Grant Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

B. Katy Lawrence
Warsaw, Kentucky

BRIEF FOR APPELLEES:

Aaron A. Vanderlaan
Frank K. Tremper
Covington, Kentucky