RENDERED:  FEBRUARY 14, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0761-MR

JAMES R. CALDWELL                                                                 APPELLANT


v.               APPEAL FROM MERCER CIRCUIT COURT
                 HONORABLE JEFF L. DOTSON, JUDGE
                 ACTION NO. 20-CI-00077


WANDA M. DRY; GEORGE
HENSLEY; MARY JO LAWSON;
MATTHEW LOCKABY; MICHELLE
RUSSELL; AND THE CITY OF
BURGIN                                                                            APPELLEES



OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  ECKERLE, A. JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  James R. Caldwell brings this appeal from orders entered

May 23, 2023, December 6, 2022, and October 22, 2020, by the Mercer Circuit

Court dismissing Caldwell's complaint.  We affirm in part, reverse in part, and

remand.

This case has a tortuous history, and we will recite only those facts necessary to disposition of this appeal. Caldwell served as the Chief of Police for the City of Burgin from 1995 until January 12, 2017, at which time Caldwell's employment was terminated by the Mayor of the City of Burgin, George Hensley.

On June 5, 2017, Caldwell filed a complaint in the Mercer Circuit Court (Action No. 17-CI-00147) against the City of Burgin (the City) and Hensley, in his official capacity as mayor of the City. In the complaint, Caldwell alleged that he informed Hensley and others that contracts then existing between the City and Hensley's son presented possible conflicts of interests for Hensley, as Mayor. Caldwell claimed that as a result, Hensley retaliated against Caldwell and eventually terminated his employment. The specific allegations were as follows:

## **FACTS**

8. Caldwell told Hensley that contracts between the city and Shane Hensley, Mayor Elect Hensley's son, presented a possible conflict of interests.

9. Caldwell suggested that Henley [sic] would need to find a way to separate the financial relationship between the city and Shane Henley [sic].

10. Thereafter, Hensley became hostile toward Caldwell.

11. In March of 2015, Councilman Cooper contacted Caldwell regarding Cooper's concerns about Mayor Hensley's possible conflicts with some city contracts evolving [sic] Shane Hensley.

12.  Caldwell suggested to Councilman Cooper that Councilman Cooper address his concerns through the council.

13.  On April 2, 2015, Caldwell sent an email to the Office of the Kentucky Attorney General outlining his concerns about Mayor Hensley's possible conflict of interest.

14.  On April 10, 2015, Mayor Hensley met with Caldwell in the Mayor's office.

15.  At that time, the Mayor threatened to fire Caldwell.

16.  Thereafter, Caldwell filed a grievance pursuant to city ordinance against Mayor Hensley.

17.  On April 17, 2015, Mayor Hensley threaten [sic] council members, Caldwell, and a local business owner.

18.  On April 21, 2015, Caldwell's work schedule was changed from Sunday and Saturday to Tuesday and Wednesday.

19.  Upon information and belief, Caldwell was the only city employee to have his scheduled [sic] changed.

20.  On May 1, 2015, Caldwell received a memorandum requesting that Caldwell take a physical examination.

21.  Upon reason and belief, on May 5, 2015, Mayor Hensley solicited complaints from Falene Otis and Hargus Gabbard that were then placed into Caldwell's personnel file.

22.  On May 6, 2014, and [sic] inspector from the Office of the Kentucky Attorney General visited city hall.

23.  Upon reason and belief, on May 7, 2015, Caldwell was the first city employee ever to be "randomly" selected for drug screening.

24.  On June 8, 2015, Mayor Hensley attempted to remove Caldwell's sick and vacation time.

25.  On July 13, 2015, Mayor Hensley followed Caldwell to two separate locations and made threats because of the investigation.

26.  On July 14, 2015, Mayor Hensley attempted to remove Caldwell's insurance benefits.

27.  On July 14, 2015, while Caldwell was on vacation, Mayor Hensley hired a new officer without consulting Caldwell.

28.  Thereafter, Caldwell filed another grievance against Mayor Hensley.

29.  On July 21, 2015, Mayor Hensley met with the ethics board.

30.  On July 30, 2015, Mayor Hensley hired a police officer without notification to Caldwell.

31.  On July 31, 2015, Caldwell was ordered to park his police cruiser at city hall while on vacation.

32.  On August 5, 2015, Mayor Hensley threatens Caldwell with violence.

33.  On August 6, 2015, Mayor Hensley inspected Caldwell's cruiser and reveals two (2) cracker wrappers.

34.  On August 8, 2015, Mayor Hensley attempted to remove Caldwell's vacation time and insurance benefits.

35.  On August 12, 2015, Caldwell received a post-dated discipline memorandum from Mayor Hensley.

36.  On October 13, 2015, Caldwell's insurance benefits were reduced by the city council.

37.  On October 30, 2015, Mayor Hensley ordered Caldwell to threaten a citizen.

38.  On November 4, 2015, Caldwell was refused access to Eric Barkman's reports.

39.  On December 2, 2015, Caldwell was written up regarding a call response.

40.  On May 7, 2016, Caldwell was injured on the job while detaining an individual.

41.  On May 10, 2016, Caldwell was advised that the city does not do "light duty."

42.  On May 11, 2016, Caldwell worked his normal shift.

43.  On May 12, 2016, Assistant City Clerk went to Caldwell's home and removed the police cruiser that was assigned to Caldwell.

44.  On June 29, 2016, Officer Casey Rucker was hired.

45.  Caldwell was not consulted regarding Rucker's hiring.

46.  In July of 2016, Hensley had all of the police department locks and keys changed and did not provide access to Caldwell.

47.  On July 12, 2016, Caldwell put a memorandum in Officer Casey Rucker's file for insubordination.

48. When Caldwell returned to his office later on July 12, 2016, he discovered that his desk had been cleaned out.

49. On July l6, 2016, Mayor Hensley's son, Shane Hensley, was awarded a city contract on a nonconforming bid.

50. On September 23, 2016, Caldwell was released by his physician to return to work.

51. On September 28, 2016, when Caldwell attempted to return to work, Mayor Hensley refused.

52. On October 10, 2016, no payment had been arranged for Caldwell to take a scheduled physical.

53. On January 12, 2017, Hensley terminated Caldwell's employment with the City of Burgin.

. . . .

### COUNT III
**Violation of KRS 342.197**

71. The above facts constitute a willful violation of [Kentucky Revised Statutes] KRS 342.197 by Mayor Hensley and the City of Burgin, in that the Mayor and the City retaliated against Plaintiff by terminating him for exercising his right to workers' compensation benefits.

72. As a result of the Mayor and the City's unlawful actions, Plaintiff has suffered actual damages in excess of the jurisdictional minimums of this Court.

## COUNT V
## Violation of KRS 344.040 (Disability Discrimination)

. . . .

78.  At the times relevant to this Complaint, Plaintiff was a member of a protected class based on disability or regarded as being disabled.

79.  Plaintiff was discriminated against in his employment on the basis of this disability or the perception that he had one.

80.  Defendants took unlawful adverse employment action against Plaintiff . . . by refusing to place him back on active duty after Plaintiff was medically cleared to be back at work.  Defendant Hensley harassed Plaintiff and terminated him because of the perception of his disability.

81.  As a direct and proximate result of the aforementioned conduct, Plaintiff has suffered emotional distress, embarrassment, humiliation, mental anguish, and loss of wages and benefits.

## COUNT VI
## Violations of KRS § 344.280 (Retaliation)

. . . .

83.  Plaintiff was in a protected class on account of his disability or regarded as being disable [sic].

84.  Plaintiff engaged in protected activity when he filed open records requests regarding his medical records.

85.  Defendants retaliated against Plaintiff for engaging in such protected activity by harassing him further, preventing him from returning to work in a timely manner, and terminating his employment.

86. As a direct and proximate result of the aforementioned conduct, Plaintiff has suffered emotional distress, embarrassment, humiliation, mental anguish, and loss of wages and benefits.

June 5, 2017, complaint at 2-8.

On June 22, 2017, the City removed the action to the United States District Court for the Eastern District of Kentucky (Action No. 5:17-CV-00275-DCR).[1] In July 2017, the parties executed a Settlement Agreement and Full Release of Claims (Settlement Agreement). Thereunder, the City agreed to pay Caldwell $50,000, and Caldwell agreed to release and to settle all claims against the City, Hensley, or any officials/employees of the City. Caldwell also agreed not to "apply for employment with the City." Settlement Agreement at 2. And the federal court dismissed the action by order entered August 8, 2017.

In 2018, Caldwell ran for mayor of the City of Burgin and was elected in November of 2018, defeating Hensley. Before assuming office, the City filed a complaint in the Mercer Circuit Court against Caldwell (Action No. 18-CI-00279) on December 14, 2018. In the complaint, the City alleged that Caldwell breached the terms of the Settlement Agreement in the federal action:

---

[1] For clarity, we shall refer to Action No. 17-CI-00147 and Action No. 5:17-CV-00275-DCR as Action No. 17-CI-00147.

## Count I:
## Breach of Contract

24. Caldwell entered into a Settlement Agreement and Full Release of Claims, a contract, with the City.

25. The City has performed all its duties and obligations under the Settlement Agreement.

26. Under the Settlement Agreement, Caldwell agreed not to seek employment with the City in the future. Caldwell also effectively agreed not to become a City employee in the future.

27. By registering as a candidate for the 2018 mayoral election, Caldwell breached the Settlement Agreement, as he effectively sought or applied for employment with the City.

28. If Caldwell takes office in January 2019 as the City's mayor, he will have breached the Settlement Agreement, under which he cannot seek employment with the City and, therefore, cannot be employed as an employee of the City.

[29]. In the Settlement Agreement, Caldwell also agreed to a liquidated damages provision, agreeing to pay the City $25,000.00 if [he] breached his promise not to apply for employment with the City or, by extension, by becoming an employee of the City.

30. To date, Caldwell has not paid the City $25,000.00, again breaching his performance obligations under the Settlement Agreement.

31. As a result of Caldwell's actions and omissions, the City has been damaged in an amount that exceeds the minimum jurisdictional limits of this Court.

## Count II:
## Specific Performance

32.  Caldwell entered into a Settlement Agreement and Full Release of Claims, a contract, with the City.

33.  The City has performed all its duties and obligations under the Settlement Agreement.

34.  Under the Settlement Agreement, Caldwell agreed not to seek employment with the City in the future. Caldwell also effectively agreed not to become a City employee in the future.

35.  By registering as a candidate for the 2018 mayoral election, Caldwell breached the Settlement Agreement, as he effectively sought or applied for employment with the City.

36.  If Caldwell takes office in January 2019 as the City's mayor, he will have breached the Settlement Agreement, under which he cannot seek employment with the City and, therefore, cannot be employed as an employee of the City.

37.  While the City may recover liquidated damages for Caldwell's breach of the Settlement Agreement, such damages do not provide a complete remedy for Caldwell's wrongful actions.

38.  The terms of the Settlement Agreement are definite and certain – Caldwell, at any time after execution of the Settlement Agreement, may not apply for employment with the City, and therefore may not be an employee of the City.  The City's elected officials, including the mayor, are employees under Kentucky law.

39.  Specific performance under the Settlement Agreement requires that Caldwell not take office and not assume the duties as the City's Mayor in January 2019,

-10-

and the remedy of specific performance under the Settlement Agreement allows the Court to enter such an order disqualifying Caldwell from taking office.

December 14, 2018, Complaint at 4-5. The City also filed a motion for a temporary injunction to prohibit Caldwell from taking the oath of office until its claims were adjudicated.

The circuit court denied the City's motion for temporary injunction, and Caldwell assumed the office of mayor. Subsequently, by order entered January 13, 2020, the circuit court dismissed the action with prejudice "[i]n accordance with the agreed Stipulation of Dismissal, and pursuant to [Kentucky Rules of Civil Procedure] CR 41.01[.]" January 13, 2020, order at 1.

Some three months later, on April 6, 2020, Caldwell filed this action (Action No. 20-CI-00077) in Mercer Circuit Court. The named defendants were the City of Burgin, Wanda M. Dry (the City attorney), Hensley (former City Mayor), Matthew Lockaby (a former attorney for the City), Mary Jo Lawson (former assistant City Clerk), and Michelle Russell (former City Clerk) (collectively referred to as appellees). Therein, Caldwell asserted:

**FACTUAL ALLEGATIONS**

9. Caldwell is a former Chief of Police of the City, having served from September 1995 through January 2017.

10. In November of 2014, Hensley was elected mayor of the City, and took office in January of 2015.

-11-

11. On or about April 2, 2015, Caldwell sent an email to the Office of the Kentucky Attorney General outlining concerns about former Mayor Hensley's possible conflict of interests.

12. On or about April 10, 2015, Hensley met with Caldwell in the Mayor's office.

13. At that time, the [sic] Hensley threatened to fire Caldwell.

14. Thereafter, Caldwell filed a grievance pursuant to city ordinance against Mayor Hensley.

15. On April 17, 2015, Mayor Hensley threaten[ed] council members, Caldwell, and a local business owner.

16. On April 21, 2015, Caldwell's work schedule was changed from Sunday and Saturday, to Tuesday and Wednesday.

17. Upon information and belief, Caldwell was the only city employee to have his scheduled changed.

18. On May 1, 2015, Caldwell received a memorandum requesting that Caldwell take a physical examination.

19. Upon reason and belief, on May 5, 2015, Hensley solicited complaints from Falene Otis and Hargus Gabbard that were then placed into Caldwell's personnel file.

20. On May 6, 2015, and [sic] inspector from the Office of the Kentucky Attorney General visited the City's city hall.

21. On or about June 8, 2015, Hensley attempted to remove Caldwell's sick and vacation time.

22. On or about July 13, 2015, Hensley followed Caldwell to two separate locations and made threats because of the investigation.

23. On or about July 14, 2015, Hensley attempted to remove Caldwell's insurance benefits.

24. On or about July 14, 2015, while Caldwell was on vacation, Hensley hired a new officer without consulting Caldwell.

25. Thereafter, Caldwell filed another grievance against Hensley.

26. On or about July 21, 2015, Hensley met with the ethics board.

27. On or about July 30, 2015, Hensley hired a police officer without notification to Caldwell.

28. On or about July 31, 2015, Caldwell was ordered to park his police cruiser at city hall while on vacation.

29. On or about August 5, 2015, Hensley threatened Caldwell with physical violence.

30. On or about August 6, 2015, Hensley inspected Caldwell's cruiser and revealed two (2) cracker wrappers.

31. On or about August 8, 2015, Hensley attempted to remove Caldwell's vacation time and insurance benefits.

32. On or about August 12, 2015, Caldwell received a post-dated discipline memorandum from Hensley.

33. On or about October 13, 2015, Caldwell's insurance benefits were reduced by the city council.

34. On or about October 30, 2015, Hensley ordered Caldwell to threaten a citizen.

35. On or about November 4, 2015, Caldwell was refused access to Eric Barkman's reports.

36. On or about December 2, 2015, Caldwell was written up regarding a call response.

37. On or about May 7, 2016, Caldwell was injured on the job while detaining an individual.

38. On or about May 10, 2016, Caldwell was advised that the city does not do "light duty."

39. On or about May 11, 2016, Caldwell worked his normal shift.

40. On or about May 12, 2016, the Assistant City Clerk went to Caldwell's home and removed the police cruiser that was assigned to Caldwell.

41. On or about June 29, 2016, Officer Casey Rucker was hired.

42. Caldwell was not consulted regarding Rucker's hiring.

43. In July of 2016, Hensley had all of the police department locks and keys changed and did not provide access to Caldwell.

44. On or about July 12, 2016, Caldwell put a memorandum in Officer Casey Rucker's file for insubordination.

45. When Caldwell returned to his office later on July 12, 2016, he discovered that his desk had been cleaned out.

46. On or about September 23, 2016, Caldwell was released by his physician to return to work.

47. On or about September 28, 2016, when Caldwell attempted to return to work, Hensley refused.

48. On January 12, 2017, Hensley terminated Caldwell's employment with the City of Burgin.

49. On June 5, 2017, Caldwell filed a lawsuit against the City and Hensley, styled as *James R. Caldwell v*[.] *The City of Burgin and George Hensley, in his official capacity as the Mayor of the City of Burgin*, Case No. 17-Cl-00147. Caldwell asserted against the City and Former Mayor George Hensley for, among other claims, wrongful termination in violation of KRS §344.040 for discrimination, and retaliation under KRS §344.280.

50. On June 22, 2017, the City removed the lawsuit to The United States District Court for the Eastern District of Kentucky, which was assigned Civil Action No. 5:17-CV-00275-DCR.

51. The parties quickly reached a settlement that involved the City paying $50,000.00 to Caldwell in exchange for a release of Caldwell's claims.

52. Initially, the City proposed a settlement agreement that included language prohibiting Caldwell from seeking election to public office.

53. On July 7, 2017, Mark Lutz, Counsel for the City of Burgin, emailed former Mayor Hensley and former City Attorney Dry informing them that, "Caldwell will not settle the case if it bars him from seeking elective office."

54. Mark Lutz specifically questioned the constitutionality of including a provision that

would require Caldwell to waive a future constitutional right, and that would be subject to a future council's decision to waive the provision.

55. Attorney Lutz recommended deleting the provision of the proposed settlement agreement that discussed preventing Caldwell from seeking elective office and the language that attempted to apply any liquidated damages if Caldwell were to run for elective office.

56. On July 24, 2017, Wanda Dry emailed Mary Jo Lawson discussing the removal of any language preventing Caldwell running for office.

. . . .

58. On August 7, 2017, Caldwell stipulated to the dismissal of his claims in the above referenced lawsuit.

59. On July 10, 2018, Caldwell filed his nominating petition to run as a candidate for the City's office of mayor, and ran against Hensley, who was the incumbent.

60. On November 6, 2018, Caldwell defeated Hensley.

61. The Mercer County Clerk certified that Caldwell received the most votes and gave Caldwell a Certificate of Election to that effect.

62. Thereafter, Hensley used the City's unauthorized funds, personnel, and other resources to continue his failed campaign, and vendetta against Caldwell, for re-election as the City's mayor.

63. On or about November 2018, Hensley unilaterally retained the services of attorney Matthew Lockaby, using the City's funds, which were not approved by the City Council, to find legal ways to prevent Mayor Elect Caldwell from taking office.

64.  On or about November 30, 2018, Hensley contacted the Secretary of State, Alison Lundergan Grimes, in an effort to open an election complaint against Mayor-Elect, James Caldwell.

65.  On December 4, 2018, Defendant Lawson contacted the Secretary of State, *via* email, to follow up on the documents Hensley had forwarded to the Secretary of State's office previously.

66.  On December 4, 2018, Lawson was informed by the Secretary of State that all Election Integrity Task Force Members with the authority to investigate and prosecute election complaints had been notified of the complaint Hensley had made against Caldwell.

67.  On December 4, 2018, Lawson forwarded the information she received from the Secretary of State regarding Hensley's complaint against Caldwell to both Hensley and Defendant Russell.

68.  Upon reason and belief, no formal action was ever taken by, as there was no legal basis for, the Election Integrity Task Force to intervene against Mayor-Elect Caldwell to prevent him from taking office on January 1, 2019.

69.  On December 4, 2018, Lawson emailed Lockaby about a December 12, 2018[,] meeting between Hensley, Dry, Russell, and Lockaby, wherein she states, "[w]e are worried about getting an injunction to keep Jim Caldwell from taking office on January 1, 2020."

70.  Upon reason and belief, on or about December 4, 2018, Lockaby conferenced with Dry regarding Hensley's concern over the need for an injunction to prevent Caldwell from taking office, and to inquire whether there is any basis for an election contest to support an injunction.

71.  Upon reason and belief, on or about December 5, 2018, Lockaby again conferenced with Dry regarding how to prevent Caldwell from taking office.

72.  Upon reason and belief, Dry made Lockaby aware of the July 7, 2017[,] email regarding Caldwell's wrongful termination settlement agreement from attorney Mark Lutz to Hensley and Dry, wherein Lutz stated the following:

Paragraph 7:  This has been changed from a prohibition on Caldwell seeking elective office to the same no reinstatement, no future application for employment language our draft had included as paragraph 6. Caldwell will not settle the case if it bars him from seeking elective office.  As you know, I questioned the inclusion of this clause initially, since it required him to waive a future exercise of a constitutional right, and would be subject to a future council's decision to waive the provision in any event.  I recommend we accept this deletion and leave this issue to the normal political process.

Paragraph 8:  This has been changed from a $25,000 liquidated damages payment if Caldwell applied for employment or ran for elective office to a $25,000 liquidated damages payment limited to the no reinstatement, no application language in paragraph 7.

73.  On December *5,* 2018, Lockaby emailed Russell and Dry stating the following:

[w]hile the City can possibly seek removal of Caldwell from the office of mayor – say, through specific performance under the settlement agreement, if he can't apply for employment with the City, he can't therefore be an employee of the City – that prospect will be rather difficult.  What is more likely, I suspect is using the $25,000.00 in liquidated damages as leverage to force his resignation through a settlement that involves,

-18-

potentially, the City waiving its right to recover some or all of the liquidated damages amount.

The only way to contest the election results, invalidate the votes for Caldwell, and to have Hensley named winner of the election will be to file an election contest in accordance with KRS 120.155 and 120.165, along with possibly, a motion for a temporary injunction to prevent Caldwell from taking office in January. This contest, however, is a separate legal proceeding from the breach-of-contract action and must be brought by Hensley individually. The statute only allows a "candidate for election" to contest the election results.

Yesterday, Hensley indicated that he may not be willing to pay the attorney's fees necessary to prosecute the election results.

74. Hensley chose not to put his own money toward contesting the election by the statutorily prescribed means, and instead chose to unilaterally pay Matthew Lockaby with the City's funds.

75. On December 11, 2018, the Burgin City Council held its regular monthly meeting.

76. Defendants Hensley, Dry, Russell, and Lawson attended the December 11, 2018[,] Council Meeting.

77. A $5,000.00 retainer check paid to Matthew Lockaby was specifically discussed and specifically excluded from the expenditures the Council approved at the December 11, 2018[,] Council Meeting.

78. Upon reason and belief, on or about December 12, 2018, Hensley, Dry, Lockaby, and Russell met to discuss how to prevent Mayor-Elect Caldwell from taking office.

79. On December 14, 2018, the City, through its attorney Matthew Lockaby, filed a verified complaint against

-19-

Caldwell, styled as *City of Burgin, Kentucky v. James Caldwell*, Case No. 18-CI-00279.

80. The City asserted breach of contract claims and sought to prevent Caldwell from taking office through injunction.

81. Hensley signed the Verification Certificate of the lawsuit asserting that the facts and allegations contained int [sic] the Verified Complaint were true and accurate to the best of his know ledge and belief.

82. On December 14, 2018, the City, through its attorney Matthew Lockaby, filed a *Motion for Emergency Temporary Injunction* to prevent Caldwell, Mayor-Elect of the City of Burgin, from taking the oath of office on January 1, 2019.

83. On December 26, 2018, the day after Christmas, the Mercer Circuit Court held a Hearing on the City's Motion for an Emergency Temporary Injunction to prevent Caldwell, Mayor-Elect of the City of Burgin, from taking the oath of office on January 1, 2019.

84. On December 26, 2018, the Mercer Circuit Court entered an order denying the City's motion for injunctive relief, stating the following:

The defendant is in possession of the Certificate of Election signed by the Mercer County Clerk, which states he received the most votes for the position. Under Kentucky law, an injunction "cannot be used in an election contest to prevent the one holding the certificate of election from qualifying and discharging the duties of the office pending the contest. The certificate gives to him whom it is issued a *prima facie* right to the office." *Harrison v. Stroud*, 129 Ky. 193 (1908).

85. After Defendant[']s failed attempt to have the Mercer Circuit Court enter an injunction to prevent

-20-

Caldwell from taking office, the City made no attempt to prosecute its "claim" against Caldwell.

86.  Upon reason and belief, on or about January 2, 2019, City Council member Sid Dunn contacted Lockaby and stated that the City Council had not approved any payment for Lockaby.

87.  Upon reason and belief, Council member Dunn requested that Lockaby reimburse the City for the money Lockaby was paid by Hensley from the City's budget.

88.  Upon reason and belief, to date, Lockaby has refused to return any money he has received from the City that was never authorized by the City Council.

89.  On January 13, 2020, the Mercer Circuit Court ultimately terminated litigation in Case No. 18-CI-00279 in Caldwell's favor.

## COUNT I
### WRONGFUL USE OF A CIVIL PROCEEDING – MALICIOUS PROSECUTION
**Against Defendant City of Burgin, Defendant Hensley, Defendant Dry, Defendant Lawson, and Defendant Lockaby**

90.  Plaintiff incorporates by reference, as set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Complaint.

91.  Defendants instituted a judicial proceeding in the Mercer Circuit Court, Case No. No. 18-CI-00279, without probable cause, for the purported purpose of attempting to collected [sic] liquidated damages from Caldwell in a breach of contract claim.

92.  Mercer Circuit Court Case No. 18-CI-00279 terminated in Caldwell's favor.

-21-

93. The Defendants wrongful purpose in instigating the above referenced litigation was to prevent Caldwell from taking his position as the duly elected Mayor of the City of Burgin by either 1.) using the unlawful threat of liquidated damages to intimidate Caldwell into conceding the election, or 2.) by having the Mercer Circuit Court delay Caldwell from taking the oath of office.

94. As a direct and proximate result of the aforementioned conduct, Plaintiff has suffered emotional distress, embarrassment, humiliation, mental anguish, and costs and expenses of litigating frivolous claims.

## COUNT II
### VIOLATIONS OF KRS § 344.280 (RETALIATION)
### Against All Defendants

95. Plaintiff incorporates by reference, as set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Complaint

96. Plaintiff was in a protected class on account of his disability or regarded as being disabled.

97. Plaintiff engaged in protected activity when he filed open records requests regarding his medical records.

98. Defendant the City and Defendant Hensley retaliated against Plaintiff for engaging in such protected activity by harassing him further, preventing him from returning to work in a timely manner, and terminating his employment.

99. Plaintiff then filed a lawsuit against the City for wrongful termination and harassment in retaliation for engaging in protected conduct.

100. The parties to the previous wrongful termination and retaliation lawsuit entered into a Settlement

Agreement wherein all claims up to the date of settlement were resolved.

101. However, the retaliation did not end at the time the Settlement Agreement was entered into.

102. Defendants conspired to file a baseless harassing lawsuit against Plaintiff in retaliation for engaging in protected activity as described in KRS §344.

103. Defendants scheduled an unfounded emergency injunction to prevent Plaintiff from taking the oath of office on the day after Christmas.

104. Defendant Hensley used the purse and name of the City in a personal vendetta against Caldwell.

105. As a direct and proximate result of the aforementioned conduct, Plaintiff has suffered emotional distress, embarrassment, humiliation, mental anguish, and loss of wages and benefits.

October 9, 2020, Amended Complaint at 3-13 (footnotes omitted).

Thereafter, Lockaby filed a motion to dismiss pursuant to CR 12.02 for failure to state a claim for which relief could be granted. Lockaby argued that to prevail upon his claim of wrongful use of civil proceedings/malicious prosecution, Caldwell must demonstrate that Action No. 18-CI-00279 was instituted without probable cause. Lockaby maintained that the determination of a lack of probable cause was an issue of law, and that probable cause existed to file Action No. 18-CI-00279. Lockaby also asserted that Caldwell was not, as a matter of law, engaged in a protected activity or belonged to a protected class as required to maintain a claim of retaliation under KRS 344.280.

-23-

Hensley, Lawson, and Russell also filed a motion to dismiss pursuant to CR 12.02 for failure to state a claim upon which relief could be granted. They claimed that the present action was barred by the Settlement Agreement in Action No. 18-CI-00279:

> In the present case, a substantial portion of Mr. Caldwell's Complaint makes extensive factual allegations covering the time period of 1994 to August of 2017. Those are the same factual allegations which were set out verbatim in Mr. Caldwell's earlier Complaint in 17-CI-00147. . . .
>
> In the present case, a side-by-side comparison of Mr. Caldwell's Complaint against the City of Burgin and Mr. Hensley in 17-CI-00147 with Mr. Caldwell's most recent Complaint in the present case, 20-CI-0077 [sic], discloses 36 of the 53 factual allegations in the Complaint in 17-CI-00147, are repeated, verbatim, by Mr. Caldwell in his most recent Complaint.
>
> As a result, a majority of the factual allegations made by Mr. Caldwell in his present civil suit were the subject of his previously-settled civil claims in 17-CI-00147. As a matter of law, the settlement of those factual allegations preclude Mr. Caldwell from attempting to again raise those same factual allegations again in the present civil suit.

September 17, 2020, motion to dismiss at 6-7.

Hensley, Lawson, and Russell additionally pointed out that only the City and Caldwell were parties to Action No. 18-CI-00279. In fact, Hensley, Lawson, and Russell maintained that "none of the other Defendants . . . were parties to, participated in, or had knowledge of, . . . the January 13, 2020[,]

-24-

Stipulation of Dismissal and the Court's Order of the same date" dismissing Action

No. 18-CI-00279. September 17, 2020, motion to dismiss at 9. Hensley, Lawson,

and Russell also contended that Caldwell, after assuming his duties as mayor,

directed the dismissal of the City's complaint in Action No. 18-CI-00279.

Therefore, Hensley, Lawson, and Russell argued that Action No. 18-CI-00279 was

not resolved in favor of Caldwell as required to maintain a claim for wrongful use

of civil proceedings.

By order entered October 22, 2020, the circuit court granted the

motions to dismiss filed by Lockaby, Hensley, Lawson, and Russell. The court

determined that *res judicata* barred Caldwell's claim of retaliation under KRS

344.280. The court concluded that a "majority of the factual allegations in the

present action was also the subject of Plaintiff's previously settled civil action,

specifically Mercer County Case No. 17-CI-00147." October 22, 2020, order at 1.

The court noted that "*res judicata* bars the re-litigation of the same factual issues

resolved in earlier civil claims." October 22, 2020, order at 1. As a result, the

court concluded that Caldwell's claim of retaliation was precluded by *res judicata*.

The court also determined that the issue of probable cause in wrongful use of civil

proceedings was one of law and sufficient probable cause existed to file Action

No. 18-CI-00279. Consequently, the court dismissed Caldwell's claims of

retaliation and wrongful use of civil proceedings against Lockaby, Hensley, Lawson, and Russell.

The City then filed a motion to dismiss. The City asserted that it retained Lockaby as counsel and that Lockaby filed Action No. 18-CI-00279 on its behalf against Caldwell. Therein, the City claimed that Caldwell breached the settlement agreement and sought a temporary injunction prohibiting Caldwell from assuming the office of mayor. After denial of the temporary injunction, the City maintained that Caldwell assumed the office of mayor, and the action was not pursued. The City pointed out that eventually Action No. 18-CI-00279 was dismissed pursuant to CR 41.01 after Caldwell, as mayor, directed the city attorney, David Patrick, to dismiss same. Additionally, the City argued that its attorney, Lockaby, had probable cause to file Action No. 18-CI-00279, thus mandating dismissal of Caldwell's claim wrongful use of civil proceedings. The City further asserted that Caldwell's retaliation claim under KRS 344.280 was barred by *res judicata*.

In its December 6, 2022, order, the circuit court noted that it had previously concluded that Lockaby, as counsel for the City, possessed probable cause to file Action No. 18-CI-00279 against Caldwell and dismissed the wrongful use of civil proceedings claim against Lockaby. As such, the court determined that Caldwell's claim of wrongful use of civil proceedings against the City must,

likewise, be dismissed and granted the City's motion to dismiss same. As to Caldwell's claim of retaliation under KRS 344.280, the court cited to Caldwell's assertion that this claim was based upon acts that occurred after the settlement agreement was entered. For this reason, the circuit court denied the city's motion to dismiss the retaliation claim.

Thereafter, the City filed a motion to alter, amend, or vacate the December 6, 2022, order. The City pointed out that in the October 22, 2020, order, the court determined that Caldwell's retaliation claim was barred by *res judicata* and dismissed said claim against Lockaby, Hensley, Lawson, and Russell. The City argued that Caldwell's retaliation claim was based upon facts surrounding Action No. 17-CI-00147, which culminated in the settlement agreement.

By order entered May 23, 2023, the circuit court granted the City's motion to alter, amend, or vacate and dismissed the retaliation claim against it. The court concluded that Caldwell had not asserted any new facts and dismissal was proper. The May 23, 2023, order contained complete finality language per CR 54.02. This appeal follows.

**STANDARD OF REVIEW**

Caldwell contends that the circuit court erred by dismissing his claims of wrongful use of civil proceedings and of retaliation under KRS 344.280. The orders dismissing Caldwell's claims were rendered after motions to dismiss were

filed pursuant to CR 12.02.  When ruling on a motion to dismiss under CR 12.02, "the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." *Mims v. Western-Southern Agency, Inc.*, 226 S.W.3d 833, 835 (Ky. App. 2007).  A court may dismiss an action for failure to state a claim upon which relief could be granted only if the "pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari-Mutuel Clerks' Union of Ky., Local 541, SEIU, AFL-CIO v. Ky. Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977).[2] Our review is *de novo*.

## WRONGFUL USE OF CIVIL PROCEEDINGS

Caldwell asserts that the circuit court improperly dismissed his claim for wrongful use of civil proceedings/malicious prosecution.  Caldwell maintains that appellees filed Action No. 18-CI-00279 without probable cause and to solely prevent Caldwell from assuming the office of mayor.  Caldwell believes that the circuit court committed error by misapplying the holding of *Prewitt v. Sexton*, 777 S.W.2d 891 (Ky. 1989).  Caldwell also contends that the circuit court erred by failing to view the facts most favorable to Caldwell.

---

[2] The parties included copies of court records in their motions and pleadings, and the circuit court relied upon these records in its orders.  However, the inclusion of court records does not convert the motion to dismiss into one for summary judgment. *See Netherwood v. Fifth Third Bank, Inc.*, 514 S.W.3d 558, 563-64 (Ky. App. 2017).

-28-

The Kentucky Supreme Court has set forth the elements of a wrongful use of civil proceedings/malicious prosecution claim, as follows:

1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;

2) the defendant acted without probable cause;

3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;

4) the proceeding, except in *ex parte* civil actions, terminated in favor of the person against whom it was brought; and

5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).[3]

Herein, we are concerned with the element of probable cause and with whether appellees possessed probable cause in instituting Action No. 18-CI-00279

---

[3] In *Martin v. O'Daniel,* 507 S.W.3d 1, 11 (Ky. 2016) the Kentucky Supreme Court appears to have merged the two torts of malicious prosecution and wrongful use of civil proceedings, even though the *Restatement (Second) of Torts* §§ 653 and 674 (1977) and prior common law had clearly differentiated the two. *See Prewitt v. Sexton*, 777 S.W.2d 891, 893-94 (Ky. 1989); *Mapother and Mapother, P.S.C. v. Douglas*, 750 S.W.2d 430, 431 (Ky. 1988).

against Caldwell. To determine same, we initially turn to the *Restatement*

*(Second) of Torts*, Existence of Probable Cause § 675 (1977):

> One who takes an active part in the initiation,
> continuation or procurement of civil proceedings against
> another has probable cause for doing so if he reasonably
> believes in the existence of the facts upon which the
> claim is based, and either
>
> > (a) correctly or reasonably believes that under those
> > facts the claim may be valid under the applicable law,
> > or
>
> > (b) believes to this effect in reliance upon the advice
> > of counsel, sought in good faith and given after full
> > disclosure of all relevant facts within his knowledge
> > and information.

It must be emphasized that probable cause "covers both a mistake of

law and a mistake of fact, and it exists where the person who initiates civil

proceedings 'reasonably believes in the existence of the facts upon which the claim

is based, and . . . that under those facts the claim may be valid under the applicable

law.'" *Prewitt*, 777 S.W.2d at 894 (quoting *Restatement (Second) of Torts* § 675).

The *Restatement (Second) of Torts* § 675, Comment e further explains that "in

determining probable cause for initiation of civil proceedings, all that is necessary

is that the claimant reasonably believe that there is a sound chance that his claim

may be held legally valid upon adjudication."

And the determination of probable cause is ultimately a question for

the court, but if there are disputed facts or circumstances relevant to a probable

cause determination, the jury must determine such disputed facts or circumstances. *Prewitt*, 777 S.W.2d at 896.

In this case, it is undisputed that Lockaby was retained by the City to represent it in Action No. 18-CI-00279. Lockaby filed the complaint and Motion for Emergency Temporary Injunction on behalf of the City. In its motion, the City argued that Caldwell breached the settlement agreement by running for mayor and by intending to assume the office of mayor. The City pointed out that in the settlement agreement, Caldwell agreed not to apply for employment with the City. To support its argument that the mayor was an employee of the City, the City maintained that it pays the mayor a salary and withholds taxes. The City also cited to 26 United States Code § 3401(c), wherein the Internal Revenue Service treats elected officials as employees of the state or political subdivision. Additionally, the City maintained that local governmental officials are considered employees under the Kentucky Civil Rights Act and cited to *Kearney v. City of Simpsonville*, 209 S.W.3d 483, 485-86 (Ky. App. 2006) as support.

In view of the City's above arguments presented in Action No. 18-CI-00279, we conclude that it was reasonable to believe that the City's claim may have been valid. Even if incorrect, the City's legal arguments were neither unreasonable nor arbitrary. Rather, the City advanced tenable legal arguments to support its claim that Caldwell breached the settlement agreement.

-31-

Based upon the above undisputed facts, we are of the opinion that probable cause existed and that the circuit court properly dismissed Caldwell's claim of wrongful use of civil proceedings/malicious prosecution against all appellees.

## RETALIATION

Caldwell also asserts that the circuit court improperly dismissed his claim for retaliation under KRS 344.280 as barred based upon *res judicata.* Caldwell maintains that under KRS 344.280(1), it is illegal for a person or persons to retaliate because a person had filed a complaint alleging violations of the Kentucky Civil Rights Act. Cardwell maintains that appellees "conspired to retaliate against him by trying to prevent him from taking elective office (almost a year and a half after resolving the previous retaliation claim by settlement agreement), because he had previously filed a complaint against Defendant Hensley and Defendant City of Burgin, that is protected under KRS §344." Appellant's Brief at 13. Caldwell asserts such subsequent acts of retaliation by appellees were not barred by *res judicata*.

It is well established that *res judicata* is an affirmative defense and is composed of two components – claim preclusion and issue preclusion. *Yeoman v. Commonwealth, Health Policy Bd*, 983 S.W.2d 459, 464-65 (Ky. 1998). Claim preclusion is said to bar "a party from re-litigating a previously adjudicated cause

-32-

of action and entirely bars a new lawsuit on the same cause of action." *Id.* at 465. To be applicable, there must be identity of parties, identity of the causes of action, and resolution of the prior action on the merits. *Miller v. Administrative Office of the Courts*, 361 S.W.3d 867, 872 (Ky. 2011). And issue preclusion operates to bar the parties from relegating an issue actually litigated and finally decided in a prior action. *Yeoman*, 983 S.W.2d at 465. To be applicable, the issue in the second action must be the same as the issue in the prior action; the issue must have been actually litigated; the issue must have been actually decided in the prior action; and the decision on the issue in the prior action must have been necessary to the court's judgment. *Id.*

Viewing the facts most favorable to Caldwell, it must be taken as true that the City filed Action No. 18-CI-00279 against Caldwell in retaliation for Caldwell previously filing Action No. 17-CI-00147 against the City and Hensley. Thus, the operative facts supporting the retaliation claim (filing Action No. 18-CI-00279) took place after the settlement agreement was reached and after dismissal of Action No. 17-CI-00147. As a result, issue preclusion is simply inapplicable as the acts of retaliation could not have been at issue in Action No. 17-CI-00147 because such acts allegedly occurred after that action was dismissed. Thus, issue preclusion will not bar Caldwell's current action. As for claim preclusion, the claim in Caldwell's current action is based upon acts of retaliation that occurred

-33-

after dismissal of Action No. 17-CI-00147; therefore, the cause of action in the current action is not identical to the cause of action advanced in Action No. 17-CI-00147.  For this reason, claim preclusion will not bar the current action.

We are buttressed in our decision that *res judicata* is no bar to the current action by the Supreme Court's recognition that "'*res judicata* does not apply . . . to facts that subsequently arise.'"  *Moorhead v. Dodd*, 265 S.W.3d 201, 204 (Ky. 2008) (quoting *Asher v. G.F. Stearns Land & Lumber Co.*, 241 Ky. 292, 43 S.W.2d 1012, 1014 (1931)).  Accordingly, we conclude that the circuit court committed reversible error by determining that *res judicata* barred Caldwell's claim for retaliation under KRS 344.280, against all appellees in this case.[4]

In summary, we affirm the circuit court's dismissal of Caldwell's wrongful use of civil proceedings/malicious prosecution claim under CR 12.02. And we reverse the circuit court's dismissal of Caldwell's claim for retaliation against appellees and remand for proceedings consistent with this Opinion.

ALL CONCUR.

---

[4] We decide the narrow issue of whether the circuit court properly determined that *res judictia* barred James R. Caldwell's claim of retaliation.  This Opinion should not be misconstrued as passing on the merits of the retaliation claim.  In their respective briefs, appellees have advanced sundry arguments attacking the validity of the retaliation claim.  These arguments may be presented to the circuit court upon remand.

BRIEF FOR APPELLANT:

John S. Phillips
Ketchikan, Alaska

BRIEF FOR APPELLEES CITY OF
BURGIN, GEORGE HENSLEY,
MARY JO LAWSON, AND
MICHELLE RUSSELL:

Melissa Thompson Richardson
Colin Buckner
Lexington, Kentucky

BRIEF FOR APPELLEE MATTHEW
LOCKABY:

Matthew W. Breetz
Bethany A. Breetz
Kyle S. Schroader
Louisville, Kentucky